## CAREY et al. v. KANSAS CITY, Appellant.

### Division Two, March 30, 1905.

1. **NEGLIGENCE: Reservoir: Duty of City: Drowning: Burden of Proof.** Where a city has turned a part of the block on which is located its water reservoir into a park, and on a level with the coping of the reservoir wall built a walk or parkway, and on the outer edge of the coping built a wire fence, the burden is on the plaintiffs, who sue for the drowning of their eleven-year-old son in the reservoir, to show that the city was negligent in performing its legal duty to exercise reasonable care and precaution in the erection of safeguards to protect from injury children and other persons who had the right to seek the park for rest and pleasure.

2. ———: ———: ———: **Care.** In such case the care required of the city is the care that prudent persons would use under the same or similar circumstances. It was not required to build a fence around the reservoir that would be impossible for boys to climb over, but only such a fence as would prevent children who had a reasonable respect for the wishes of the owners of the property from trespassing upon it.

3. ———: ———: ———: **Trespasser: Matter For Jury.** A reservoir, indispensably necessary for the operation by the city of its waterworks, was inclosed with a wall, on the outer edge of the coping of which was a woven wire fence four and a half feet high, and on a level with that was a walk for the accommodation of persons who might wish to visit the park which constituted the rest of the block. Plaintiffs' son, eleven years old, although he had before been chased from the inside of the fence

by watchmen and he and other boys had been notified that they were not permitted to go inside the fence, climbed the fence, and in trying to fish out a frog which other boys had wounded, slipped, fell in, and was drowned. There was no other way to enter the reservoir inclosure except to climb the fence. *Held;* that the boy was a trespasser, and the court should have instructed the jury that the fence was a reasonable exercise of the city's duty to safeguard the reservoir, and erred in submitting it to the jury to say whether or not the city had exercised such reasonable care and precaution as the law imposes on it.

Appeal from Jackson Circuit Court.—*Hon. James Gibson,* Judge.

REVERSED.

*R. J. Ingraham, J. W. Garner* and *L. E. Durham* for appellant.

(1) The petition in this cause does not state facts sufficient to constitute a cause of action. Barney v. Railroad, 126 Mo. 372; Overholtz v. Vieth, 93 Mo. 422; Straub v. Soderer, 53 Mo. 39; Thompson on Negligence, 303; Shearman & Redfield on Negligence, 505. (2) There was no evidence of negligence upon the part of appellant in constructing and maintaining the fence around the reservoir, and the court should have so declared as a matter of law. Keoun v. Railroad, 141 Mo. 86; Yarnoll v. Railroad, 113 Mo. 570; Rutledge v. Railroad, 123 Mo. 136. (3) The pleadings and evidence did not warrant a submission of the case to the jury. The court erred in overruling appellant's instruction in the nature of a demurrer to the evidence. Barney v. Railroad, 126 Mo. 372; Lineburger v. St. Paul, 71 Minn. 245; Ritz v. Wheeling, 45 W. Va. 243; Moran v. Pullman Co., 134 Mo. 641; Arnold v. St. Louis, 152 Mo. 173; Gillispie v. McGowan, 100 Pa. St. 144; Ryan v. Tower, 55 L. R. A. 310; Cooper v. Overton, 45 L. R. A. 591; Railroad v. Edwards, 32 L. R. A. 825; Smith v. Pk. Co., 82 Mo. App. 9; Witte v. Stiffle, 126 Mo. 295; Schauf v. Paducah, 6 Am. Neg. Rep. 73; Bowman v.

Omaha, 52 Neb. 293; Peters v. Bowman, 115 Cal. 355.
(4) Instruction 3, given by the court of its own motion, upon the part of the respondents, was not supported by the evidence that the respondents' son, while playing in said park or parkway, fell into the reservoir. Gavin v. Chicago, 97 Ill. 69; Sparks v. Transfer Co., 104 Mo. 531; Marr v. Bunker, 92 Mo. App. 661; Bergeman v. Railroad, 104 Mo. 77; Evans v. Railroad, 106 Mo. 594. (5) Instruction two, upon the part of respondents, should not have been given. There was no evidence to support it, in this, that there was no evidence of the earning capacity of the child, nor was there any evidence of the probable expense of education and maintenance, nor was there any evidence as to value of services. Dunn v. Railroad, 21 Mo. App. 188; Snider v. Railroad, 73 Mo. 467; Railroad v. Marcus, 2 Am. Neg. Rep. 290; Smith v. Railroad, 108 Mo. 243; Duke v. Railroad, 99 Mo. 347; Slaughter v. Railroad, 116 Mo. 269. (6) Respondents' son when he climbed the fence and went into the inclosure in which the reservoir was situated, was a trespasser, and the appellant owed him no duty. This is not a case where a person passing along a public way accidentally falls into a dangerous place, and is killed. Straub v. Soderer, 53 Mo. 38; Arnold v. St. Louis, 152 Mo. 173; Gillespie v. McGowan, 100 Pa. St. 144. Nor does it change the rule because respondents' son was a minor. Lineberg v. Railroad, 71 Minn. 245; Gavin v. Chicago, 97 Ill. 67.

*William Moore* and *Joseph P. Fontron* for respondents.

(1) Plaintiffs' amended petition, upon which the case was tried, states a cause of action. Schmidt v. Distilling Co., 90 Mo. 285. (2) Appellant's second contention, that the court should have declared, as a matter of law, that there was no evidence of appellant's negligence as to the fence around the reservoir has no foundation, for the following reasons: First,

under the circumstances of this case, the sufficiency of the fence was a question for the jury. Second, appellant did not ask the trial court to declare that it was not negligent in this particular. Third, the trial court is under no obligations to instruct the jury on all the issues in a case, of its own motion. Fourth, appellant conceded that it was a question of fact for the jury by offering its instruction number four, which the trial court gave. It is bound by that position in this court. Mirrielees v. Railroad, 163 Mo. 486; Pratt v. Conway, 148 Mo. 299; Whitmore v. Supreme Lodge, 100 Mo. 36. (3) The instruction in the nature of a demurrer to the evidence was properly overruled. An inspection of the record shows that appellant created a public park around a deep reservoir, which for all practical purposes became part of the park, to which the public, including children, were expressly invited; that the reservoir was particularly attractive to children who frequented that portion of the park in great numbers every fine day; that the reservoir had steep, slimy walls, and was usually full of water; that boys could very easily climb over the wire fence around the reservoir, and did so frequently, and the city authorities knew it, and knew all the foregoing facts for several years. The record also shows that the fence was a wire affair, four and one-half feet high, which scarcely reached the boy's chin, and this fence was situated so as to leave a tempting place inside it for the boys. Plaintiffs' son climbed over this fence after a frog, fell into the water, and was drowned. The watchmen of the city, who, it appears, habitually neglected their duties were absent as usual. Under this state of facts it was a question for the jury to decide whether the defendant had done its duty in the matter of safely guarding this dangerous place, and a demurrer to the evidence was properly overruled. Schmidt v. Distilling Co., 90 Mo. 285; Price v. Water Co., 58 Kan. 551; McMahon v. Pekin, 154 Ill. 141; Car Co. v. Cooper, 60 Ark. 545; Stout v. Railroad,

:17 Wall. 661; McDonald v. Railroad, 152 U. S. 273; Miller v. Peck, 78 S. W. 682; Hydraulic Works Co. v. Orr, 83 Pa. St. 333; Corbin v. Philadelphia, 195 Pa. St. 461; Gramlich v. Wurst, 86 Pa. St. 78. (4) Respondents' instructions correctly stated the degree of care required by law for the appellant in this case. The instructions told the jury that the city was required to use reasonable and ordinary care in guarding the reservoir. This was proper under the circumstances. Appellant cites the cases of Lineburg v. St. Paul, and Garvin v. Chicago, to suppprt its claim that the instruction is erroneous. These cases do not hold that the defendants were not required to use reasonable and ordinary care, but, on the contrary, the courts which pronounced the decisions in these cases held that the evidence showed that the city had used reasonable and ordinary care under the circumstances, and so they were not negligent. (5) Appellant's point that the respondents' son was a trespasser is without merit: First, because he was expressly invited to the place by defendant; second, under the doctrine of the turntable cases, the attractiveness of the place was tantamount to an invitation, and in neither event was he a trespasser in a legal sense. Schmidt v. Kansas City, 90 Mo. 285; Price v. Water Co., 58 Kan. 551; Stout v. Railroad, 17 Wall. 661; Car Co. v. Cooper, 60 Ark. 545; Straub v. Loderer, 53 Mo. 38; O'Malley v. Railroad, 43 Minn. 289; Thompson on Negligence, sec. 1024; Shearman & Redfield on Negligence, sec. 98.

FOX, J.—This action was brought in the circuit court of Jackson county, Missouri, by John Carey and Mary Carey, his wife, in September, 1900. On May 22, 1901, the plaintiffs filed an amended petition which is shown in this record and upon which the case was tried.

The plaintiffs are the parents of Maurice Carey, their eleven-year-old son, who was drowned in what is

known as Observation Park reservoir, in Kansas City, on the afternoon of August 1, 1900. The reservoir is the property of the defendant, Kansas City.

This reservoir was created over twenty years ago and occupied the south half of the block bounded by Twentieth street on the north, Twenty-first street on the south, West Prospect on the east and Holly street on the west. This block is the summit of a hill, and prior to the year 1899, the edges of the reservoir could be reached only by scaling the side of the hill and then climbing up the parapet of earth surrounding the basin, which is about twenty-five feet deep. During this time a hedge fence interlaced with barbed wire surrounded the block at the base of the hill at or near the street line.

In the spring of 1899 Kansas City passed an ordinance, creating a park out of the north half of this block, and placing the land under the control of the park commissioners. The hedge fence at the bottom of the hill was removed, a fancy stone retaining wall, with wide ascending steps from Twentieth street was constructed at the north end of the property, and the hitherto vacant half block was converted into a small park with fountain, walks, seats, etc.

The water department of Kansas City co-operated with the park board, constructed a gravel walk ten feet wide around the edge of the reservoir and graded its north embankment so that the walk (or parkway, as it is described in the petition) was reached by walking up a gentle slope from the park.

While it appears that the reservoir occupied the south half of the block and was controlled by the water department, and that the park board controlled or managed the north half of the tract, where the city had created a park, it is indicated by the testimony, by the close connection of the reservoir and park, and the fact of the improvement of the walk around the reservoir, that the entire tract was looked upon by the public as

a park; in fact the water department, by erecting a gravel walk ten feet wide around the edge of the reservoir, had a tendency to induce the public to believe that the entire premises were used as a resting place for the public. The wall of the reservoir all around was capped with a stone coping, about two feet wide, extending three inches beyond the wall on the inside. This coping was about level with the walk outside. On the outer edge of this coping, the city in 1899 erected a woven wire fence about four and a half feet high. There were also watchmen to keep a watch about the park and reservoir, but the testimony shows they were not at all times around the reservoir. It further appears that the top of the coping on the inside of the fence was about eighteen inches wide. There were a number of children that frequented this park and a number of them would climb over the fence, to walk around on the top of this coping and to fish and throw stones at frogs. The watchmen had frequently chased them away and there is no question but what the children knew they were not allowed inside of the fence. In fact Fred Miller, one of the boys who testified in behalf of the plaintiffs, stated that the watchmen had run Maurice Carey, plaintiffs' son, from the inside of the fence, sometime before he was drowned. It further appears from the testimony that this fence could not be climbed by boys unless they removed their boots or shoes. On the day the boy was drowned the water in the reservoir was about twenty feet deep. Plaintiffs' son and a number of other boys were playing in the park about the reservoir and one of the boys crippled a frog with a stone. The little boy, Maurice Carey, climbed over the fence to the ledge inside and then stepped down to the slanting part of the basin and reached out with a stick to get the frog. His feet slipped and he went down into the depth of the reser-

voir, and all attempts at his rescue were unavailing and he was drowned.

This action was brought by his parents for damages for his death, which they allege was due to the negligence of the city as specified in their amended petition. The defendant's answer was a general denial and a special plea of contributory negligence of the drowned boy. The reply was a general denial of this special plea. The negligence of the defendant complained of, is thus stated in the petition:

"Plaintiffs for cause of action, state that said park and said reservoir were very attractive to the children in the vicinity, and that said children were accustomed to resort to said park and parkway and the edge of said reservoir to play; that said reservoir was at all times filled with water to the depth of ten feet or more, and had steep and abrupt walls around it, all of which the defendant well knew, or by the exercise of reasonable and ordinary care might have known, a long time prior to August 1, 1900.

"Plaintiffs further state that it was the duty of the defendant to erect and maintain a proper and sufficient wall or fence at or near all the edges of said reservoir and particularly at and near the north edge to prevent children who were playing along the edges of said reservoir who were playing in said park or parkway, from falling into the same and being drowned, and also to have said reservoir properly watched and guarded, to prevent children from climbing over said fence, and falling into the water.

"Plaintiffs further state that the defendant carelessly and negligently failed to provide a proper or sufficient fence or wall on all the edges of said reservoir and between it and said park, and parkway, and negligently and carelessly failed to have said reservoir properly watched and guarded for the protection of children, as aforesaid, and that on or about the 1st day of August, 1900, the plaintiffs' son, Maurice Carey,

deceased, as aforesaid, while playing in said park and parkway about said reservoir and at or near the north edge thereof fell into the same and was drowned and died, by reason of the negligence and carelessness of the defendant in failing to maintain a proper and sufficient fence at a proper place along the edges of said reservoir, and in failing to have said reservoir properly watched and guarded as aforesaid.''

At the close of the evidence, the court, at the request of plaintiffs, gave instructions numbered 1, 2 and 3, as follows:

"1.  The court instructs the jury, that in determining whether or not the plaintiffs' deceased son, Maurice Carey, was guilty of negligence contributing to his death, the jury will take into consideration his age, capacity, knowledge and experience, and the jury are further instructed that if the plaintiffs' deceased minor son was, at the time he received the injuries complained of, and immediately before that time, exercising such care for his own safety as boys of his age and intelligence ordinarily exercise under the same or similar circumstances then he was not guilty of negligence contributing to his death.

"2.  The court instructs the jury that if you find for the plaintiffs you may award them such damages not exceeding $5,000 as you may deem from the evidence will compensate them for the loss of their said minor son's probable earnings and services until he would have arrived at the age of twenty-one years, and for burial expenses, if any were incurred by them by reason of his death, less the reasonable costs of his support and education during his minority.

"3.  By negligent or negligence as used in these instructions is meant the lack of ordinary care, and ordinary care is the care which ordinarily careful and prudent persons would use under the same or similar circumstances.''

The defendant requested the court to give instructions numbered 1, 2, 3 and 4 as follows:

"1. Now at the close of all the evidence the court instructs the jury that under the pleadings and evidence in this case your verdict must be for the defendant.

"2. The court instructs the jury that the plaintiffs' son was a trespasser, when he climbed the fence and went inside the inclosure.

"3. The court instructs the jury that the defendant was under no obligations to provide watchmen to keep persons out of the enclosure around the reservoir.

"4. The court instructs the jury that the defendant was under no obligation to provide a fence around the reservoir which could not be climbed by boys; and if you believe from the evidence that the fence was sufficient to keep persons using the graveled walk outside of the fence from falling into the reservoir, then your verdict should be for the defendant."

The court refused numbers one and two as requested by defendant, and gave numbers three and four.

The court of its own motion then gave to the jury instructions numbered 1, 2, 3 and 6 as follows:

"1. If the jury believe from the evidence that the fence in question was reasonably sufficient to prevent children of the age, capacity, knowledge and experience of Maurice Carey, from climbing over the same and falling into the reservoir, then the jury will find for the defendant.

"2. The court instructs the jury that if all of you agree upon a verdict, the same may be signed by your foreman and returned into court. If, however, nine or more and less than twelve of you agree upon a verdict, such verdict will be signed by all those so agreeing, and the same will then be returned into court as your verdict.

"3. If the jury believe from the evidence that plaintiffs are father and mother of Maurice Carey, deceased, and that said Maurice Carey was at the time of his death single and unmarried, and left neither widow nor children, and was in the service and employment of his said parents, plaintiffs herein; that the defendant Kansas City owned and operated for pecuniary profit a waterworks system, in connection with which it also owned and used the reservoir in which said Maurice Carey was drowned on August 1, 1900, and that on the north side of and immediately adjacent to said reservoir was a park known as Observation Park, and around said reservoir and immediately adjacent thereto was a parkway, which said park and parkway were the property and under the control of said defendant, and that children were accustomed to resort to said park and parkway to play, and that said reservoir in its then condition was dangerous to children playing in said park and parkway, and that the defendant knew of such danger, or by the exercise of reasonable care might have known of it a length of time prior to August 1, 1900, to have made the same reasonably safe by the exercise of reasonable care; and if you further believe from the evidence that defendant neglected and failed to maintain a reasonably safe wall or fence at the edges of said reservoir so as to prevent children playing in said park and parkway from falling into said reservoir, and if you believe that said failure on the part of said city to so maintain such a fence or wall was negligent and careless; that on August 1, 1900, plaintiffs' son, Maurice Carey, while playing in said park and parkway at or near the north side of said reservoir fell into said reservoir and was drowned by reason of said carelessness and negligence of defendant in failing to maintain a reasonably sufficient fence or wall around said reservoir to prevent children while playing in said park and parkway from falling into said reservoir, then your verdict should be

for the plaintiffs, unless you further believe from the evidence that said Maurice Carey was guilty of negligence directly contributing to his death.

"6. If you believe from the evidence that Maurice Carey in climbing over the fence in question was guilty of negligence directly contributing to his death, then plaintiffs can not recover; and in determining this question, you will take into consideration his age, capacity, knowledge, and experience, and whether or not he was exercising such care for his own safety as boys of his age and intelligence ordinarily exercise under the same or similar circumstances."

The cause was submitted to the jury upon the evidence and instructions of the court as herein indicated, and they returned a verdict finding the issues for the plaintiffs, assessing their damages in the sum of $4,000. Defendant filed a motion for a new trial and prior to the disposition of which plaintiffs entered a remittitur for $500, and the motion for a new trial was overruled and judgment rendered accordingly. From this judgment defendant prosecuted its appeal to this court and the cause is now before us for consideration.

OPINION.

The two important propositions presented for consideration upon the record in this cause, are:

First: Did the trial court commit error in refusing the instruction requested by the defendant at the close of the evidence in the nature of a demurrer to the testimony, that plaintiffs under the pleadings and evidence were not entitled to recover?

Second: Were the instructions upon which this cause was submitted to the jury consistent, and did they correctly present the case to the jury upon the facts developed upon the trial?

Numerous cases are cited by counsel, both for appellant and respondent, in support of the respective

contentions urged as controlling in the solution of the
legal propositions involved. We have carefully and
in detail reviewed the testimony at the trial as dis-
closed by the record and have also given a careful con-
sideration of the cases to which our attention has been
so earnestly directed. While some of the cases re-
ferred to announce legal propositions which have some
application to the questions involved in this contro-
versy, however, the most of them are unlike the case
at bar, and furnish but little aid in the solution of the
vital points in controversy. The question with which
we are confronted upon the undisputed evidence in
this cause, is not as to the duty imposed upon the city
to take reasonable precaution or exercise reasonable
care to prevent accidents to children and other persons
visiting Observation Park, but the crucial question is,
does the testimony tend to show that the defendant
failed to exercise such reasonable precaution and care
to prevent such accidents as is required under the law?

It is clear under the proof in this case that the res-
ervoir, situated as it was, was a place of danger to per-
sons and particularly children who had the right to
seek the park for rest and pleasure, and the duty was
imposed upon the defendant to exercise reasonable
care in the erection of safeguards to protect them from
any injury. It is equally clear that it is incumbent
upon the plaintiffs to establish the negligence of the
defendant in the performance of this legal duty im-
posed upon it; in other words, to constitute the neg-
ligence complained of in this case the burden is upon
the plaintiffs to show the want of ordinary care and
precaution to prevent injury to children and other peo-
ple who had the right to visit the park. The solution
of this proposition leads us to a careful consideration
of the testimony in respect to the efforts made by the
city to prevent any accidents to people who might
visit the park.

The testimony as to what the city did in respect to

guarding against accidents around this reservoir is un-disputed, and if what was done by the city was such care as prudent persons would use under the same or similar circumstances, then there was no negligence, and it was the duty of the court to simply so declare to the jury. The proof in this case is clear that the children in that neighborhood visiting the park were fully aware that they were prohibited from getting inside of the fence enclosing the reservoir. While it may be said that they had the right to use the park as though by an express invitation, it must not be forgotten that the invitation did not authorize them to go on the inside of the fence enclosing the reservoir. The fact that the son of plaintiffs and other children had climbed the fence, and that plaintiffs' son was drowned by reason of slipping into the reservoir, falls far short of establishing negligence on the part of the defendant and want of reasonable care in the erection of barriers around such reservoir. The care to be exercised by the city was only reasonable care; they were not required to build a fence which would make it impossible for boys to climb over, but only required to erect such a fence as would prevent children who had at least reasonable respect for the wishes of the owners of the property from trespassing upon it. The proof shows that the defendant erected around this reservoir a woven wire fence four feet and a half high; that children in order to climb over it were required to take off their boots or shoes; that there were watchmen in the park who gave this reservoir some attention, and while they were not always present around the reservoir, yet they had on different occasions notified the children to keep on the outside of the fence, and the testimony further shows that plaintiffs' son, prior to this fatal accident, had been chased from the inside of the fence by one of the watchmen.

It is apparent from the record before us that the reservoir, while closely connected with the park, in

fact constituted no part of it, and the act of any person, whether child or grown person, in undertaking to climb over the barrier placed around the reservoir by the city, must certainly be treated as an attempt to commit a trespass. For the testimony is undisputed that the children, and particularly the boy that was drowned, had full notice that they were not allowed to get inside of the fence enclosing the reservoir.

In view of the facts in this case (unless it is to be said that such barriers must be so erected as to make it impossible for all boys to get over them), we are unwilling to say that the erection of the fence as shown by the testimony in this case; the attention given the premises by the watchmen; the notification that the boys had that they were not permitted on the inside of this fence, was not the exercise of reasonable care to prevent any injury to persons who might be visiting in the park. The testimony showing the exercise of such reasonable care and precaution being undisputed, it was the duty of the court to so declare to the jury.

This reservoir was an indispensable necessity for the operation of the waterworks of the defendant, and while it may be conceded that it was dangerous to children visiting the park, all that was necessary on the part of the defendant was to exercise a reasonable precaution to avoid such danger. It was not required to make it absolutely safe—to do that, as was said in the case of Peters v. Bowman, 115 Cal. 345, "it would be necessary to have either filled or drained the reservoir;" for no ordinary fence would answer the purpose of preventing boys from getting on the inside of the reservoir, if they once made up their minds to disregard all barriers and the wishes of the owners of the property.

Plaintiffs' son was eleven years old; he knew that the city prohibited him from getting on the inside of this fence; for as one of the witnesses for plaintiffs in this case testified, he had been chased away from it,

and had this fence been ten feet high, it would have no more accomplished the purpose of keeping boys from the inside of it, than the one that was erected by the defendant; the only difference would have been a slight additional effort in order to have climbed over it. While the children had the perfect right to visit this park and enjoy the pleasures of it, it is clearly apparent from the testimony in this case, that they were perfectly safe in the enjoyment of such pleasures with the barrier erected by the defendant so long as they confined themselves to the pleasures of the park, and did not attempt to surmount a reasonable barrier to gain an entrance to the reservoir, in violation of the known wishes and express prohibitions of the defendant city. Hence we have reached the conclusion that the facts, as developed at the trial of the case, fail to show that the defendant was negligent in not taking reasonable precautions to prevent injury to persons visiting the park.

In Butz v. Cavanaugh, 137 Mo. 503, plaintiff sought to recover for injuries received by a boy twelve years old in running down a dump in the city of St. Louis. Certain ordinances of the city were read in evidence requiring dangerous places within the city adjacent to public streets to be properly enclosed with fence or walls. Plaintiff was not injured by falling into a dangerous excavation on a street; when injured he was on private property some distance from the street, where he went voluntarily. There was a failure on the part of the city to comply with these ordinances and the plaintiff was injured. MACFARLANE, J., in discussing the propositions involved in that case, said: "But this ordinance is in derogation of a common right, and a failure to comply with its requirements should not be treated as a license to voluntary trespassers to go upon the property at will. It was evidently intended to protect those only who were lawfully using the public streets and not those who voluntarily leave

the street and go upon the property for their own convenience or pleasure. A fence would be no protection against such persons. These last remarks may not apply to persons *non sui juris,* who may wander upon the property, but we do not regard plaintiff as such a person. He was an intelligent, active lad of twelve years, who had been warned by his father of the danger of going into the excavation. He must be taken as voluntarily assuming the risk of injury in going down the dump. The attraction of a piece of wire does not excuse the trespass.''

It will be observed in the case last cited, that the boy had simply been warned by his father of the danger of going into the excavation. In this case the boy was eleven years old; he had been driven out of the enclosure of the reservoir; there was a fence four feet and a half high; he had to climb that in order to commit the trespass—hence it is made apparent that there is much stronger reason in this case for invoking the rule announced by Judge MACFARLANE, that the attraction of the reservoir furnished no excuse for the trespass. Where the testimony relied upon to constitute negligence is undisputed, it is then a question of law to be determined by the court whether such given state of facts tends to prove negligence. [Keown v. Railroad, 141 Mo. 86.]

To support this judgment we are cited to what are commonly known as the ''Turn-Table cases,'' and a line of cases predicated upon the principles announced in them. It is apparent that upon the crucial question presented in this case, and what we have said upon that question, those cases are not applicable and furnish no support to the judgment of the trial court in this cause, and there is no necessity for reviewing them. While many courts of very high standing have indulged in very strong adverse criticism of the principles announced by these cases, we deem it unnecessary to express an opinion as to the correctness of the critisism

so indulged. The question presented in Railroad v. Stout, 17 Wall. 657, which is the leading turntable case, was whether or not the leaving exposed of dangerous machinery which was attractive to children, unguarded, constituted negligence. In the case at bar, we start out with the propositions that this reservoir, situated as it was, was attended with great danger to children who might visit the park, and the vital question is as to whether the defendant city adopted reasonable means to keep the children away from such danger. It will be observed that in the Stout case, Judge DILLON, in his charge to the jury, stated that if defendant took no means to keep children away and to prevent accident it would be guilty of negligence and would be answerable for damages caused to children by such negligence. It is clear from that case that the basis for recovery was predicated upon the fact that the defendant took no means to keep the children away from a turn-table that had been left exposed, and which was attractive to children. That is not this case. Here we have a barrier reasonably sufficient to prevent children or anyone else from going inside of the reservoir; in addition to that the notification by the watchmen that they were not permitted to go inside. The court in the Stout case said that ''the evidence was not strong and the negligence was slight.'' With that view as to the testimony in that case, we can readily surmise as to what would have been the conclusion of the court if it had been confronted with the testimony in this case, which so clearly shows a reasonable precaution to prevent any accident to children visiting the park. From this it is manifest that there are no differences to be reconciled upon the principles announced in the turn-table cases and the conclusion as reached in the case at bar. Hence, we repeat that there is no necessity for burdening this opinion with a review of the principles involved in the turn-table cases.

Learned counsel for respondent earnestly direct

our attention to the case of Price v. Water Co., 58 Kan.
551, as supporting their views upon the question pre-
sented in this controversy. It must be conceded that
this case most nearly approaches the determination of
the propositions involved in the case at bar, of any
of the cases to which our attention has been called.
Yet upon a careful analysis of that case, it is clearly
distinguishable from the one in hand. That was a reser-
voir case, and there were some means adopted to avoid
the danger to children who frequented the reservoir for
fishing or other sports. According to the statement of
the learned judge as to the facts in that case, the means
consisted of a barbed wire fence ten or twelve wires
high; there were two gates through the fence, which,
however, were always kept closed, and two rudely con-
structed contrivances designed for stiles, but being, as
described by some of the witnesses, "sheds" or large
boxes nailed to adjacent trees and enclosing most of
the wires, but upon and over which it was not difficult
for boys to climb from the outside. A watchman and
custodian of these grounds was employed by the de-
fendant. He was aware of the habit of the boys of the
town to climb over the stiles and permitted them to
do so without objection. The facts in that case clearly
distinguish it from the one now under consideration.
The sheds or boxes in the enclosure in the Kansas case,
were defects in the fence and boys could pass into the
reservoir without difficulty, and in addition to this, we
have the watchman or custodian of the premises con-
senting and permitting the boys to so enter the reser-
voir. It will be observed that the conclusions an-
nounced by the learned Judge in that case were pred-
icated principally upon the consent and permission of
the defendant to the boys to trespass and enter the res-
ervoir.

The discussion of the propositions in Price v. Wa-
ter Co., supra, makes manifest the reasons of the con-
clusions announced. The proposition was thus stated

and disposed of: "Counsel for defendant in error endeavors to distinguish the 'turn-table' and other like cases from the one under discussion, upon the ground that, in such first-mentioned cases, the dangerous instruments or places were not inclosed, so as to exclude or warn trespassers, while, in the present case, the reservoirs had been so fenced as to render access to them difficult, to say the least, and in any event to operate as notice to stay on the outside because of the dangerous situation within. Whatever merit such precautionary measures might have under other circumstances, it is sufficient to say that, in this case, they were not reasonably effective; because it was the daily habit of trespassing boys to mount the fence and frequent the reservoir on the inside, and this habit was known to the company's responsible agent, *and was not only tolerated but went unrebuked by him.* Knowing the fence to be ineffective either as barrier or warning, it was the duty of the company to expel the intruders, or adopt other measures to avoid accident. Whatever advantage the defendant in error might have gained from the erection of a reasonably effective barrier or warning, is neutralized *by the facts of its knowledge that the boys did trespass, and its permission to them to do so.* It is as though no fence at all had been erected."

We have no hesitancy in saying that if the facts as disclosed by the record in this case were similar to those in the case just cited, the question of the negligence of the defendant would have been properly submitted to the jury; but that the facts in these two cases are materially different, is too plain for discussion. In the Kansas case we have defects in the enclosure which made it convenient for the boys to enter the reservoir, or at least not difficult. Emphasizing this, there was no objection, and as the court states permission and consent, to enter inside of the reservoir. In this case we have no defects in the fence; it was four feet and a half high; boys could not climb over it without

removing their boots or shoes; the watchmen had prohibited them and chased them away from the reservoir, and this unfortunate boy, Maurice Carey, had been chased away by one of the watchmen on a prior occasion.

In our opinion, the facts disclosed by the record in this case show that the city, by the erection of the fence, the attention given to the reservoir by the watchmen and the notification to the children that they were not permitted inside of the reservoir, was exercising reasonable care to prevent accident to children or other persons visiting the park. To hold otherwise would be imposing upon the defendant the extraordinary duty of maintaining a barrier so high and so close that children could not find ways or means to surmount it, and this we are unwilling to do. This proposition was sharply presented in Lineburg v. City of St. Paul, 71 Minn. 245. The principle involved in that case was identical with the one in the case before us. The facts may thus be briefly stated: "Along the side of a certain portion of Second street, in St. Paul, is a precipice 40 feet deep, and nearly perpendicular for a considerable portion of that depth. The edge of the precipice is within the line of the street as dedicated, and the sidewalk on that side of the street extends along near such edge. Between the sidewalk and the edge of the precipice the city had erected and maintained a fence three and a half feet high above the surface of the sidewalk. This fence consisted of posts driven in the ground, a board six inches wide and an inch thick nailed flat on the top of the posts, and two boards of the same dimensions nailed one above the other on the sides of the posts. The space between each of these boards was about ten inches. Plaintiffs' son, a boy five and a half years of age, at play in the street, crawled through this fence or climbed over it, fell down the precipice, and was killed. This action was brought to recover damages under the statute for the wrongful death. On the trial

the court dismissed the action at the close of plaintiff's evidence, and from an order denying a new trial plaintiff appeals.''

It must be noted that this precipice was adjacent to a public street where children frequently traveled and had the right to do so; that this was a dangerous place there can be no dispute. The court very clearly and forcibly declared the law applicable to the state of facts. It was said: ''It is claimed that it is a question for the jury whether or not the city was negligent in failing to maintain at the place in question a fence or barrier over which children could not climb and through they could not crawl. We can not so hold. In Tarras v. City of Winona, supra, page 22, we held that the city may be negligent in failing to protect travelers on a street from a precipice or embankment along the side of the same, which is peculiarly dangerous. The place in question was peculiarly dangerous, and it may be conceded that for the protection of persons on the street it was the duty of the city to maintain a proper fence or barrier at this place. But, in our opinion, it appears by the evidence that the city has done so. No such extraordinary duty should be imposed on the city as that of maintaining a barrier so high and so close that children cannot find ways or means to surmount it.'' The court also ruled during the course of the opinion that, ''the fact that children were in the habit of going over or through the fence in question, and down the precipice, to play in the sand below, can not change the result.'' This case, in our opinion, states the true and correct rule as applicable to cases of this character, and is decisive of the first proposition involved in this controversy.

In Gavin v. City of Chicago, 97 Ill. 67, in discussing a case where a four-year-old child was injured by a defective bridge, the bridge not having any barrier, it was ruled that ''the corporation was not required to so construct its bridges that accidents would be impos-

sible to persons using them.'' It was said by the court that ''that would be imposing upon them a higher degree of care than the public welfare would demand. Something must always be left to the provident care of persons using them.   The bridge in question was reasonably safe to persons using ordinary care.  .  .  . No duty rests on the city to make such bridge safe for children to play around or upon  .  .  .  and if they wander from their homes without the knowledge of parents, and sustain injury at such places, it must be attributed to mere accident.''

It was said by the Virginia Supreme Court, in Clark v. City of Richmond, 83 Va. l. c. 359, in discussing the question of protection to children from danger in places adjacent to streets and walks of the city, that ''this duty cannot be held to extend to the protection of children against every sudden freak that may possess them.  Corporations have indeed been held, in some instances, liable for a failure to adopt suitable precautions and safeguards to protect children against turn-tables and dangerous machines which they have permitted to remain sufficiently near their streets and sidewalks to allure and entice children into using them to their hurt; but no case, so far as we are aware, has gone to the extent of holding a municipal corporation liable in damages to a child who had left the street or highway and suffered an injury as a consequence of his having climbed upon a structure entirely without its travelled limits, and fallen therefrom.'' So we say that no case has been called to our attention going to the extent of holding a municipal corporation liable in damages under a state of facts similar to those disclosed by the record in this case.

The sadness of this case has lead us to make diligent effort in search of a reasonable rule upon which this judgment could be supported, but after a careful consideration of all the authorities our efforts in that

direction have been unavailing, and we are unwilling to announce a rule as to the exercise of reasonable care by a municipal corporation in order to meet the sad features of this case, that we would not be willing to follow in cases unsurrounded by such serious and sad conditions. The precautions taken by the city in respect to the avoiding of danger to children visiting the park were reasonable, and the fact that the child willfully violated the known wishes and prohibitions of the city and surmounted a reasonable barrier to the reservoir and was thereby injured cannot be treated as negligence upon the part of the defendant, and unless there was negligence on the part of the defendant, there can be no recovery in this case. This was a sad and unfortunate accident, for which this defendant is not responsible.

The instruction requested by defendant at the close of the evidence, that plaintiffs were not entitled to recover, should have been given.

Having reached the conclusions as herein indicated upon the first proposition, it becomes unnecessary to discuss the complaint of appellant as to errors of the instructions given in this cause.

Entertaining the views as herein expressed, it results in the conclusion that this judgment must be reversed, and it is so ordered.

All concur.