(No. 12592.—Reversed and remanded.)

FRANK F. FOLLETT, Admr., Defendant in Error, *vs.* THE ILLINOIS CENTRAL RAILROAD COMPANY, Plaintiff in Error.

*Opinion filed June 18, 1919.*

1. NEGLIGENCE—*owners must take precautions to protect children playing with attractive device on premises.* Where an owner creates upon his premises a device which from its nature has a tendency to attract children and is either dangerous in itself or is in a dangerous locality, the law requires such reasonable precautions as the circumstances admit of to prevent children from playing with the thing or to protect them from injury while playing with it.

2. SAME—*plaintiff must prove ordinary care by parents with respect to child going to dangerous locality.* An administrator suing to recover for the death of a child who was run over while playing near a railroad must prove that the parents, whose home was near the railroad, exercised ordinary care with respect to the child

going near the tracks, and an instruction stating such proposition should not be so modified as to put the burden on the defendant to prove that the parents did not exercise such care.

3. SAME—*what must be shown to render a negligent act the proximate cause of injury.* To make a negligent act the proximate cause it is not necessary that ·the particular injury could reasonably have been foreseen, and where the consequences follow in unbroken sequence from the wrongful act. to the injury, without an intervening efficient cause, it is sufficient if at the time of the negligence the wrongdoer might by the exercise of ordinary care have foreseen that some injury might result from his act or neglect.

FARMER, J., dissenting.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

WOODWARD & HIBBS, (JOHN G. DRENNAN, of counsel,) for plaintiff in error.

R. C. DONOGHUE, BUTTERS & CLARK, and H. H. BAYNE, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The plaintiff in error, the Illinois Central Railroad Company, maintained on the west side of its single main track, running northerly and southerly, a depot in the north part of the city of Oglesby until December, 1912, when it abandoned that depot for a new one half a mile or more south, near Walnut street, and the old depot was kept locked and used only by the section men for their tools. The depot was on the west side of the track and was 48 feet long, and between it and the track there was what is called a platform about 150 feet long and 14 feet wide, made of cinders covered with crushed stone, and there was a wooden curb-

ing around it. The platform was eight or ten inches higher than the rail, and south of it there was a passing track on the east side of the main line, leaving that line at a switch-point about 250 feet south of the depot. The railroad company kept an ordinary push-car, with a platform about eight feet long and about five or six feet wide, at the depot, and it was sometimes locked or fastened and sometimes not. On the evening of June 23, 1913, the push-car was not locked or fastened and could be pushed about. Shortly after seven o'clock on that evening a freight train headed north, consisting of twenty-eight cars loaded with cement and eight empty coal cars at the rear, without a caboose, stood on the passing track waiting for a passenger train to go south. The passenger train went by and the switch was then lined for the main track so that the freight train could go north. When the last car went out of the switch the rear brakeman lined the switch for the main line, gave the go-ahead signal and climbed on the rear coal car. The train was moving three or four miles an hour and it then increased its speed to about seven or eight miles an hour in passing the depot. Cassie Kosinski, a girl seven years and nine months of age, lived with her parents about 700 feet from the depot. The family had supper about 6:30 and afterward Cassie went to the depot platform, and as the train passed she was run over and fatally injured, so that she died the next day. Her administrator brought suit for damages in the circuit court of LaSalle county, and the cause was tried upon the original declaration of one count and three additional counts, charging defendant with liability on the grounds that the push-car was attractive and enticing to children; that trains frequently passed the platform and Cassie was induced to go to the place to play by the fact of the push-car standing there unlocked; that children, while playing with the push-car, would be liable to be struck by passing trains or slip or fall down the abrupt edge of the platform or be drawn under the wheels of a passing train

by air suction; that the defendant knew, or had a reason-
able opportunity to know, that children had been in the
habit of going to the platform to play and pushing the push-
car about on the platform, and that Cassie, while playing
with the push-car, was unavoidably struck by the freight
train, run over and injured so that she died. The plea was
not guilty.

The controverted questions of fact were whether the de-
fendant was guilty of negligence in leaving the push-car un-
locked; whether the parents of the child exercised ordinary
care with respect to her going to the depot; whether she
was at the time playing with the push-car and pushing it
about, and if so, whether it was the proximate cause of her
injury and death. There was a verdict followed by a judg-
ment for $3500, and on appeal to the Appellate Court for
the Second District the judgment was affirmed. The rec-
ord has been brought from the Appellate Court by writ of
error, in pursuance to a *certiorari* allowed by this court.

There was no witness testifying who saw the accident.
A witness who lived east of the depot testified that he went
to the depot and crossed the track to the platform; that as
he went over the platform he saw Cassie Kosinski pushing
the push-car north near the south end of the depot, a foot
or a foot and a half west of the track; that there were
other children there but not close to her, and she was the
only one pushing the car; that he passed the engine of the
freight train south of the platform and the train was not
going fast; that he walked a little distance and heard some-
body scream and turned around and saw a brakeman pick
up the child about five or six feet north of the place where
he saw her pushing the car, and that the car then stood near
the edge of the platform, about the same distance as when
he passed it before. He was a Lithuanian and testified at
the trial through an interpreter, and he had been examined
in English by an agent of the defendant concerning what
he knew. His answers to questions at that time were taken

down by a stenographer, who testified that he spoke English and the witness understood what he said. There were differences in the statement then made from his testimony at the trial, the chief material difference being that there were.lots of kids pushing the car, and there were somewhat different statements at the trial as to the place where the child was picked up, but, of course, some difficulty in speaking English when the statement was given must be taken into account. On the part of the defendant the rear brakeman, who had set the switch and climbed on the last car, testified that he gave a stop signal when he heard someone scream and ran and picked up the child and afterward gave her to her mother; that he saw the push-car at that time and it was about a foot from the depot and 12 or 15 feet from the railroad track, and that when he picked up the child he saw a woman and baby right north of the depot but she disappeared all of a sudden and he did not see her go. The engine foreman in charge of the train, who was forward brakeman, testified that after the passenger train went through he lined up the switch for the main track to let the freight train out of the passing track, and after a .few cars had passed he got on top somewhere between the engine and the eighth or tenth car and stood up on a box-car; .that the train was going three or four miles an hour and in passing the depot he saw some children and a woman with a baby in her arms; that there were three girls there, running around playing at the south end of the depot; that he did not see any push-car and did not see anybody pushing the car; that he started for the Kosinsky home to call the parents; that when he came back the push-car was standing north of the depot, four or five feet from it and probably 24 feet from the railroad track. Two employees of the Marquette Cement Company testified that they used to get on the cars in going back from their work when the "Q" work train was late, and that they climbed on top of a car about the middle of this freight train while it was

standing on the passing track and sat down, facing west. One of them testified that when they passed the depot he saw a woman with a child in her arms sitting on the push-car, a few feet from the north end of the depot, and saw a little girl running along the side of the box-car, with her hand extended towards the train. The other one testified that as they passed the platform he did not see any push-car or see anyone pushing the car back and forth; that there were three or four children standing near the depot; that he did not see a woman there holding a baby, and that he did not see the platform near the cars and could not have seen the push-car if it was down close to the train. A witness for the plaintiff said that the platform was a foot or eighteen inches from the west rail of the track, and the station agent testified that it was about three and one-half feet. Whether the push-car was near the edge of the platform or not, it was undisturbed and not struck by the train. A witness for plaintiff testified that she saw Cassie at the depot about seven o'clock, and also saw a woman there at that time sitting on the push-car, facing the railroad tracks.

At the close of the evidence the defendant moved the court to direct a verdict of not guilty, and the motion was denied. This recital of the evidence as to the controverted facts sufficiently shows that the court did not err in denying the motion. The court did not err in submitting the issue to the jury, and whether the verdict was contrary to the greater weight of the evidence was for the trial court and the Appellate Court.

The law fixes a different standard of liability in case of injury to children going upon premises where there is a dangerous agency than that which applies to adult persons. Where an owner creates upon his premises a dangerous thing which from its nature has a tendency to attract children, who from childish instincts are drawn into danger, the law requires such reasonable precautions as the circumstances admit of to prevent them from playing with the

thing or to protect them from injury while playing with it. The cases fall into two classes: First, where the injury results from some dangerous element a part of or inseparably connected with the alluring thing or device, as in the turn-table cases, where children may be killed or injured while playing with the thing on account of its dangerous nature; second, where the attractive device or thing is so located or situated that in yielding to its allurement the child, without such intervention of another element as breaks the relation of cause and effect, is brought directly in contact with danger from some independent source which occasions the injury. (*Seymour* v. *Union Stock Yards Co.* 224 Ill. 579.) The push-car was entirely harmless in itself and had no dangerous element which was a part of or inseparably connected with it, and therefore it did not come within the first class. Any charge of negligence against the defendant would rest on the fact that the childish instincts of children would naturally attract them to play with the push-car, which might bring them into contact with means of danger to which the defendant exposed them by not locking or fastening the push-car.

The push-car was kept at the depot for the use of the section men in handling railroad ties, and the defendant asked the court to give the jury this instruction:

"The court instructs the jury that the defendant company had the legal right to place and maintain the push-car in question on its own premises."

The court modified it to make it read that the defendant company had the legal right "ordinarily" to place and maintain the push-car in question on its own premises. Perhaps it would not have been error to refuse the instruction, because no question as to the right to keep the push-car at the depot for the handling of ties had been raised before the jury and the only question related to its being unlocked or unfastened, but to say that the defendant had ordinarily the right would naturally raise an inference that under some

circumstances it had no such right. As instructions are to be applied by the jury to the case, the jury, in making the application, might except the keeping of the push-car there from the right which the defendant ordinarily had. The instruction should not have been given as amended by the court.

There was evidence relating to the degree of care exercised by the parents of the child with regard to her going from her home to the depot and the circumstances of the family, and the defendant asked the court to instruct the jury that it was the duty of the parents to exercise the same degree of care concerning the child as an ordinarily prudent person would exercise under like circumstances, and to find the defendant not guilty unless they believed, from a preponderance of the evidence, that at the time of the injury the child's parents, and each of them, did exercise that degree of care. The court modified the instruction so as to read as follows:

"The court instructs the jury that it was the duty of the parents, and each of them, of said Cassie Kosinski to exercise the same degree of care concerning the said child as an ordinarily prudent person would exercise under like circumstances, and if you believe, from the preponderance of the evidence, that at the time of the injury to said Cassie Kosinski that such parents, and each of them, did not exercise the same degree of care concerning their child as an ordinarily prudent person would exercise under like circumstances, and that such want of ordinary care on the part of the parents contributed in any degree to the injury and death, then you must find the defendant not guilty."

The defendant had a right to have the law given to the jury that the burden was on the plaintiff to prove the exercise of ordinary care on the part of the parents, who were to participate in any recovery, and the instruction was changed by the court so as to place that burden upon the defendant, and require it to prove, by a preponderance of

the evidence, that the parents did not exercise the required degree of care.

The defendant asked, and the court refused to give to the jury, the following instruction:

"The court instructs the jury that the defendant is not liable in this case unless you find, from a preponderance of the evidence, that the defendant should have anticipated, prior to June 23, 1913, that plaintiff's intestate or other children would have been attracted to defendant's premises by means of said push-car standing on or near the platform and would have been injured or killed by a railroad train when such children were playing with said push-car."

The declaration charged that the defendant knew, or had reasonable opportunity to know, that for three months prior to the accident children were in the habit of resorting to the platform, playing and pushing the car about, and by nearness of the track to the platform children were liable to be struck by passing trains or to fall down by playing with and pushing the car about and be killed or injured by passing trains. The defendant would only be liable if the circumstances were such that it should have anticipated that children would be attracted to the premises by means of the push-car standing on the platform and would have been injured or killed by a railroad train when playing with the push-car. The justification offered for the refusal of the instruction is that it was not necessary for the defendant to have anticipated that a child might be injured or killed by a railroad train but it was sufficient if it had an opportunity to know that some sort of injury might result to children playing with the car. The courts have been called upon to determine whether an act of negligence was the proximate cause of a resulting injury and have formulated rules for determining what is a proximate cause. It is not necessary to make a negligent act the proximate cause that the particular injury could reasonably have been foreseen, but if the consequences follow in unbroken sequence from

the wrongful act to the injury without an intervening efficient cause, it is sufficient if at the time of the negligence the wrongdoer might, by the exercise of ordinary care, have foreseen that some injury might result from his act or neglect. (*Pullman Palace Car Co.* v. *Laack*, 143 Ill. 242; *City of Dixon* v. *Scott*, 181 id. 116; *Chicago Hair and Bristle Co.* v. *Mueller*, 203 id. 558; *Illinois Central Railroad Co.* v. *Siler*, 229 id. 390.) The connection of a negligent act with actual consequences does not depend upon the question whether the precise injury complained of or the manner of its occurrence ought to have been foreseen, but it is sufficient that a person of ordinary prudence would have foreseen that his negligence would probably result in consequent injury of some kind. Courts, however, in the trial of issues of fact do not deal merely in abstractions, and both by the pleadings and the evidence in this case there was no question but that if a child was brought in contact with the train by pushing the car about, any negligence of the defendant was the proximate cause. The push-car was not a dangerous agency and in itself contained no element of danger. There was no other possibility of injury that the defendant could have anticipated except that in playing with the push-car a child might be brought into a dangerous place, and the only danger was the existence of the railroad track and passing trains. Besides that fact, the declaration alleged as the ground of liability that the defendant knew, or had reasonable opportunity to know, that one playing with the car might come in contact with trains and be injured, and it was error for the court to refuse to advise the jury that plaintiff was bound to prove his declaration.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*

Mr. JUSTICE FARMER, dissenting.