## OLSON v. OTTERTAIL POWER CO.
### et al.
### No. 9529.

Circuit Court of Appeals, Eighth Circuit.
June 22, 1933.

WOODROUGH, Circuit Judge, dissenting.

Harry E. Dickinson, of Minot, N. D. (E. R. Sinkler, G. O. Brekke, and George A. McGee, all of Minot, N. D., on the brief), for appellant.

E. T. Conmy, of Fargo, N. D. (Conmy, Young & Conmy, of Fargo, N. D., on the brief), for appellees.

Before STONE and WOODROUGH, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge.

The plaintiff, Ray Olson, a minor, brought suit against the defendant for personal injuries resulting from the alleged negligence of the defendant. There was a trial to a jury, and a verdict for the defendant was directed at the close of the plaintiff's evidence. The plaintiff has appealed from the resulting dismissal of his case, and alleges error in the direction of the verdict. The question presented is the sufficiency of the evidence to show negligence of the defendant. The defendant maintained on leased ground in the city of Devils Lake, N. D., in connection with its business of producing and transmitting electricity, a transformer plant or substation inclosed in a yard surrounded by a substantial fence of mesh wire, with a further protection of barb wire at the top of the fence. In this fence was a gate of similar construction, eight feet wide and seven feet high, which was usually kept locked. Inside the yard there were several tall upright structures consisting of steel girders supported by steel columns. On the ground under these girders were a number of cement blocks, and on these blocks there stood a series of cylinders or shells, inside of which were the coils and connections constituting electrical transformers. Wires led from the top of the transformers through a series of insulators to the structure above.

The plaintiff, who was then a boy seven years and four months old, accompanied by his cousin, a boy eleven years old, entered the yard of this substation through the gate, which temporarily had been left open. They proceeded to one of the cement blocks, and both of the boys climbed to the top of the block and stood up along the side of the shell which was placed on that block. The plaintiff reached up with his hand above the top of the shell, and it came in contact with an electric current, and he was badly burned. The plaintiff seeks to recover damages because of this injury upon the grounds that the defendant was negligent in failing to keep the gate closed, in failing to guard and insulate the transformer, and in constructing the transformer plant so that it could be touched by persons in the yard. The defendant denied any negligence on its part.

From the evidence it appeared that the two boys had approached this yard by some commonly used paths or roads. The direct testimony as to what then happened is given in the testimony of the two boys. The older boy testified that they saw some wires and "something brown on the top" inside of the fence, that they walked in the open gate, and that they stood up on the cement block. He further testified that the plaintiff climbed higher than he did and touched a wire, when a big shock occurred with a noise like the report of a gun, and smoke appeared, and the plaintiff fell down. The plaintiff's own testi-

mony was that they went into the yard through the gate, and that after he was inside the fence he saw a "shiny thing" on top of a pole, and that he went over to it and climbed up pretty high on the cement block and that he thought he touched a live wire then. There was testimony by other witnesses tending to show that the plaintiff touched some point of electrical contact six and a half to nine feet above the ground, and at a point above the top of the shell, and that the "shiny" object referred to in the boy's testimony was probably one of the insulators above the transformer. There was undisputed testimony by the manager of the defendant's plant that the purpose of the fence was to keep out intruders who might tamper with the plant and that no one could get hurt by walking into the yard or by touching any of the appliances in it, which were within reaching distance. There was testimony that there were two signs on the outside of the fence and one inside which rested against one of the transformers. The signs were large, and on them was printed in red letters, "Warning, 3000 Volts. Keep out. Danger." The older boy testified that he read the signs on the fence and knew that he might get a shock and be hurt if he went inside the fence, and that he knew that he had no business to go inside the fence. The plaintiff at the time of the trial was nine years old and in the third grade in school. He testified that he did not know why he went into the yard; that he saw the fence around it; that he knew that there were live wires there before he went in; that he knew that with the fence around there he should not go in; and that he saw some signs there telling him to keep out.

The plaintiff sought a recovery in this case under the rules of law discussed in many cases such as Sioux City & P. Railroad Company v. Stout, 17 Wall. 657, 21 L. Ed. 745; Union Pacific Railway Co. v. McDonald, 152 U. S. 262, 14 S. Ct. 619, 622, 38 L. Ed. 434; United Zinc & Chemical Co. v. Britt, 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615, 36 A. L. R. 28; Hardy v. Missouri Pac. R. Co. (C. C. A.) 266 F. 860, 36 A. L. R. 1.

One of the many forms in which this doctrine of liability has been stated is as follows: " * * * One who has that on his own premises, or who creates a condition on the premises of another, or in a public place, which may reasonably be apprehended to be a source of danger to children, is under a duty to take such precautions as a reasonably prudent person would take to prevent injury to children of tender years whom he knows to be accustomed to resort there, or who may, by reason of something there which may be expected to attract them, come there to play." 36 A. L. R. 38, note. By all the cases the basis of liability is negligence. In the case of Railroad Company v. Stout, supra, it appeared that a child was injured in playing with an unfastened railway turntable. The case was submitted to the jury to decide whether it was negligence to leave this appliance unlocked and unguarded. In Union Pacific Ry. Co. v. McDonald, supra, the facts were that a frightened boy ran over what appeared to be dead ashes, but what was in fact burning slack, and was injured. It was held that the defendant was guilty of negligence in failing to guard the slack by a fence, as required by a statute. The principle involved was illustrated in that case by a quotation from Bennett v. Railroad Company, 102 U. S. 577, 26 L. Ed. 235, as follows: "The owner or occupant of land, who, by invitation, express or implied, induces or leads others to come upon his premises for any lawful purpose, is liable in damages to such persons—they using due care—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him, and not to them, and was negligently suffered to exist, without timely notice to the public, or those who were likely to act upon such invitation."

There are many other cases which show that the basis for recovery under this doctrine is not the mere injury to the child by the maintenance of the dangerous agency at a place where children may resort for play and may be attracted to meddle with it, but it is the failure to take proper precautions, under the circumstances, to prevent the danger. Atlanta & W. P. R. Co. v. Green (C. C. A.) 246 F. 676; Barnhill's Adm'r v. Mt. Morgan Coal Co. (D. C.) 215 F. 608; Cahill v. E. B. & A. L. Stone & Co., 153 Cal. 571, 96 P. 84, 19 L. R. A. (N. S.) 1094; Follett v. Illinois Cent. R. Co., 288 Ill. 506, 123 N. E. 592; Price v. Atchison Water Co., 58 Kan. 551, 50 P. 450, 62 Am. St. Rep. 625; Lyttle v. Harlan Town Coal Co., 167 Ky. 345, 180 S. W. 519; Ball v. Middlesborough Town & Lands Co., 68 S. W. 6, 24 Ky. Law Rep. 114; Webster v. Corcoran Bros. Co., 156 Wis. 576, 146 N. W. 815; Routt v. Look, 180 Wis. 1, 191 N. W. 557; Kopplekom v. Colorado Cement Pipe Co., 16 Colo. App. 274, 64 P. 1047, 54 L. R. A. 284; Chicago, B. & Q. R. Co. v. Krayenbuhl, 65 Neb. 889, 91 N. W. 880, 59 L. R. A. 920; Baxter v. Park, 44 S. D. 360, 184 N. W. 198; City of Shawnee

v. Cheek, 41 Okl. 227, 137 P. 724, 51 L. R. A. (N. S.) 672, Ann. Cas. 1915C, 290; Foster v. Lusk, 129 Ark. 1, 194 S. W. 855. In these cases as in Railroad Co. v. Stout, supra, and Union Pacific Ry. Co. v. McDonald, supra, the fact that the dangerous thing is left entirely unguarded may be negligence. It is obvious that the guarding of the dangerous object may be done by mechanical means, such as inclosure by buildings, fences, or by the use of locks. Or the guarding may be done by the presence of watchmen or employees who prevent access by children. In many instances, there is an endeavor to prevent the danger by the removal of children who are near the danger or by warning them of the danger. So also warnings of the danger or against a trespass by means of signs are often relied upon, instead of giving personal warnings by the owner or watchmen or employees. The reasonableness of the precautions used depends in such cases, as in other actions for negligence, upon the circumstances of the case. In Carey v. Kansas City, 187 Mo. 715, 86 S. W. 438, 70 L. R. A. 65, and Lineburg v. City of St. Paul, 71 Minn. 245, 73 N. W. 723, the presence of fences was regarded as the exercise of reasonable care as to children, although they were easily scalable by children, and the children had been injured by going over or through them into danger.

In McMillin's Adm'r v. Bourbon Stock Yards Co., 179 Ky. 140, 200 S. W. 328, 330, L. R. A. 1918C, 682, the court considered that a stockyards company was not guilty of negligence, when it had a cattle dip in connection with its stockyards, which was reasonably sufficient to keep out intruders, although a boy six years old and a companion of the same age entered into the stockyards through a gate which had been left open, and one of the boys, while playing about the dip, fell into it and was drowned. It was shown that the company drove boys away whenever they were seen on the premises. The basis of the decision is disclosed by this extract from the opinion: "Everybody who has any acquaintance with the habits of children knows how difficult it is to keep them out of inclosures inside of which there are suitable playgrounds, or indeed any kind of ground on which children can run and romp, or where there are things that are attractive to children. And so the law, in its tender regard for the safety of children, and in an effort to protect them from being hurt by the dangerous places, appliances, and machinery of one kind and another that may be found in premises where children are in the habit of going, or where they might be attracted to go, puts on the owner of such premises a duty that he does not owe to adults. But this duty does not go to the extent of making the owner an insurer of the safety of trespassing children. It only requires him to take reasonable precautions for their safety, and among these precautions are the duty of warning and notice as well as the duty, in some instances, of protecting by barriers, and especially are these last precautionary measures required at places where children are permitted without objection to go and play. But the owner need not keep gates that are on his inclosed premises continually locked, and need not build his fence so high that no person can climb over it; nor is he required to have servants continually on the lookout for trespassing children. He need only exercise reasonable care, considering all of the surrounding conditions and circumstances, to prevent trespassing children from being hurt by the dangerous things he may have about his premises, and this we think the stockyard company did."

In the case of New York, N. H. & H. R. R. Co. v. Fruchter, 260 U. S. 141, 43 S. Ct. 38, 67 L. Ed. 173, it was held that the plaintiff, a boy of eight years, was not entitled to recover against a railway company upon the theory of an implied invitation to climb to the top girder of a bridge and thence to a tower in quest of a birds' nest. The court mentioned the fact that boys often climbed to the top of this bridge, but that they had often been chased away by a policeman or guard, and that at each corner of the bridge there was a signboard reading: "Live wires, Danger, Keep off." It was said to be left doubtful if the injured boy could read these signs, but that he had stated that he had looked to see whether a policeman was present before he started to climb, and would not have climbed if one had been there.

In the present case the plaintiff admitted in his testimony that he knew that he should not go inside the fence, that he saw the signs telling him to keep out, and that he knew there were live wires inside the fence. If the plaintiff, with this knowledge, had entered the yard by climbing over the fence, or if he had been met by a guard at the gate and had been warned against entrance, or had been taken away with a similar warning, but had returned and entered, although he appreciated the warning and appreciated his duty not to enter and the danger in so doing, the warning would not have been more effective than was the presence of the fence, the knowledge

of dangerous wires, and the warning on the sign that he saw and understood. If it were doubtful whether he saw the sign or understood its meaning, there might have been a question for the jury whether the defendant had used reasonable care towards the plaintiff, but, on the undisputed facts, it was the duty of the trial court to find that the defendant had exercised reasonable precautions under the circumstances and to direct a verdict accordingly. The judgment will be affirmed.

WOODROUGH, Circuit Judge (dissenting).

This is a suit for damages on behalf of a little boy who sustained the personal injuries complained of when he was seven years and four months old. It appears that the defendant power company maintained a transformer station located by itself upon a piece of prairie within the limits of Devils Lake, N. D., operating most of the time with nobody around it. Photographs of the plant are in the record, and detailed description is unnecessary, further than to say it presents to the layman's eye the same general appearance as innumerable other such stations maintained for the same purpose throughout the country. Currents of electricity ranging from as low as 2,300 volts up to 40,000 volts were continuously present while the plant was in operation; not accessible to be touched, however, in any part of the structure lower than six and one-half or nine feet above the ground. Above that height many of the wires, if touched, would give a person an electric shock. The substation was fenced about with a practically unscalable wire mesh fence; access being had by a gate about eight feet wide and seven feet high, which was kept locked except when some kind of work had to be done at the transformer station. There were paths and trails leading by the plant and to the gate. There were signs upon the fence "Warning," "Keep Out," "Danger," "3,000 Volts."

The plaintiff, in company with a small boy older than himself, wandered across the prairie to the transformer plant, found the gate standing open, nobody around, and started to climb up on the structure. Plaintiff climbed higher than his companion and touched a live part. A short circuit was formed, accompanied by loud noise and disruption of the transmission of current, and the boy fell to the ground very badly injured. It is claimed on his behalf that the company was negligent in maintaining a dangerous construction, accessible to children, to which they would probably be attracted to their hurt, and without using reasonable precaution against injury to them. The trial court instructed for the defendant.

The cases are collected by this court in Hardy v. Missouri Pacific R. Co., 266 F. 860, 36 A. L. R. 1, and Silver King Coalition Mines Co. v. Lindseth, 19 F. (2d) 221; and in the majority opinion in this case.

An officer of the defendant company testified that the idea of a fence around transformer stations is to protect the company's property, and the inference is plain that such properties are universally protected in some such way. Undoubtedly the warning signs "Keep Out," "Danger," "3,000 Volts" have something of the same purpose. On the other hand, these constructions that conduct, control, and transform currents of electricity, the most potent material agency of our times, have something of an attraction about them. The almost omnipotent element which they control is mysterious and the way they do it more so. The shining wires, ceramics, and metal parts attract the eye; and the assembled unit appears strange and, as a whole, it fascinates, intrigues, and excites curiosity. Reasonable men may honestly believe that, when it is abandoned in plain view upon an open prairie, children will probably be attracted to it and that it ought to be fenced away from them. I think so.

Some elements of a trap are suggested in the picture of this electricity transforming apparatus standing out alluringly on the open prairie with the unscalable wire fence around it and a gate left enticingly open. About the worst trap the malice of man devises against the hateful rat is a mesh of wires the rodent cannot get through, a lure in sight inside, and then a one-way opening. Without intention, if somebody forgets to close the gate in the fence around the transformers, there is something of similitude there so far as little boys are concerned. The record does not say so in this case, but I think there is a sort of humming sound about the thing, something like a spinning top.

Inasmuch as such transforming plants, universally, are fenced and placarded with signs, and inasmuch as we have at least this one instance of hurt to a child from leaving the gate open, it appears to me that the question whether it was negligence ought to be left to the jury. I give but little weight to what the little boy may say a year and a half later about "what evil genius put him" to the trespass. The jury may honestly believe, no matter what he says, that it was just

the natural child in him. Nor to the fact that he had to climb a little to get hurt. They always fall out of the hayloft after they have climbed up into it. The case ought to have been left to the jury.