GEORGE T. De COURCY, Respondent, v. PRENDER-
GAST CONSTRUCTION COMPANY, Appellant.

### St. Louis Court of Appeals, June 8, 1909.

1. **NEGLIGENCE: Obstruction on Sidewalk: Question for Jury.**
In an action for personal injuries sustained in a fall occasioned
by an obstruction on a sidewalk, it is for the jury to determine
whether or not defendant was negligent in obstructing the side-
walk with rails eight inches above it, without displaying any
danger signals to warn passers-by.

2. ————: ————: **Assumption by Pedestrian.** Persons walk-
ing along a sidewalk when and where it is dark, have the right
to assume that it is free from dangerous obstructions.

3. ————: ————: **Contributory Negligence: Question for Jury.**
Where the proof is not conclusive that plaintiff knew of the ex-
istence of an obstruction in a sidewalk, either from having seen
it there, or from knowing it was an inseparable concomitant of
certain machinery, which he did know was there, the question of
whether he was guilty of contributory negligence in endeav-
oring to pass under such machinery without investigating the
condition of the walk is for the jury.

4. **INSTRUCTIONS: Damages: Amount of, Limited by Petition.**
Where the petition claims damages in the sum of $150, on ac-
count of medical care and treatment, and the evidence shows
the total cost to plaintiff in that regard is $108, an instruction
which fails to limit the recovery on that item of damages to
the amount demanded in the petition is not erroneous.

5. **EVIDENCE: Expert Testimony: Based on Plaintiff's Previous
Statement.** A physician who attended plaintiff was properly
permitted to testify to statements plaintiff made to him re-
garding his condition, suffering and ailments at the times the
physician treated him. The physician's opinion about plaintiff's
condition was based on them, and they were competent evi-
dence in connection with the opinion, and as its basis.

6. ————: ————: **Cause of Injury: Invading Province of Jury.**
A physician's opinion that plaintiff's symptoms could have re-
sulted from a fall was properly received in evidence. Such evi-
dence does not invade the province of the jury.

7. **PLEADING: Damages: Not Necessary to Allege Permanency.**
Damages may properly be awarded for permanent loss of virility,
although permanent loss of it is not alleged in the petition.

8. **DAMAGES: Excessive Verdict.** Where plaintiff's leg as a result of a fall over an obstruction placed on the sidewalk by defendant was severely bruised, and he was unable to lie down at night and sleep after the injury, many nights not sleeping over four hours, though before the accident he had slept soundly, and he was compelled to continually consult doctors, and physicians testified that he was neurasthenic, and that such condition might have been caused by the fall, that they found signs of laceration of ligaments between the vertebrae at the lower end of the spine and effusion of blood there, but there was no evidence to prove that the consequences of the injury would be permanent, or that plaintiff would suffer a permanent loss of virility, a verdict for $4,500 was excessive; $3,500 being ample compensation for the injuries.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Shields*, Judge.

AFFIRMED *nisi*.

*A. R.* and *Howard Taylor* for appellant.

(1) The trial court erred in failing to sustain the instruction asked by this appellant at the close of plaintiff's evidence, and such error was not cured by the evidence for the defendant. A party seeing an obstruction or danger in a street, as in this case, there lawfully, is negligent as a matter of law in undertaking to pass through or under it without proper investigation, and does so at his peril. He knowingly chose a way obviously unsafe and should not recover. Kohn v. Kansas City, 108 Mo. 392; Wheat v. St. Louis, 179 Mo. 581. (2) The court erred in allowing the witness, Dr. Walker, to give in evidence the plaintiff's statements with regard to his condition, suffering and ailments. A physician can not even consider a narrative of a past condition made by the patient in giving his opinion as an expert as to the extent and nature of an injury or ailment of the patient. Gibler v. Railroad, 132 Mo. App. 104. This case reviews the authorities on this question and announces as the correct rule, that statements by the patient as to his present

condition may be given in evidence as a basis for the opinion of an expert. Such statements as to a past condition can not be considered properly by an expert in giving his opinion. Holloway v. Kansas City, 184 Mo. 38. (3) The verdict was grossly excessive without the element of the alleged impairment of plaintiff's virility. (4) The instruction given by the court at the instance of the defendant, erroneous in that it does not limit the amount to be recovered for "medical care and treatment" to the amount claimed in the petition. This instruction is erroneous and prejudicial in the following particulars: 1st. The instruction fails to limit the amount to be recovered on account of any moneys paid out for medical care and treatment to the amount claimed in the petition, to-wit, $150, but allows the jury to return a verdict for any sum so paid out for medical care and treatment, and this error is not cured in this case by the *remittitur* in the trial court, because there is no way of ascertaining what amount the jury may have awarded for this element of damages. Smoot v. Kansas City, 194 Mo. 513. 2nd. There is no charge or claim in the petition that any of the alleged injuries sustained by the plaintiff were permanent, except those to his spine and nervous system. Yet this issue is submitted to the jury, and under this instruction the jury may have found some other one of these injuries were permanent. Instructions submitting to the jury the elements of damages to be considered by the jury "should not in any case go beyond the petition." St. Louis v. Kansas City, 110 Mo. App. 655. In an action for personal injuries an instruction is erroneous which submits to the jury an element of negligence not alleged in the petition. Browning v. Railroad, 118 Mo. App. 458. Instruction presenting issues not within the pleadings is erroneous. Veatch v. Norman, 109 Mo. App. 375. Such instruction is reversible error. Barton v. Covering Co., 113 Mo. App. 466; Politoartz v. Citizens Tel. Co., 115 Mo. App. 60.

*Richard F. Ralph, P. H. Cullen, Thos. T. Fauntleroy* and *Shepard Barclay* for respondent.

(1) The case was properly submitted to the jury. Defendant was bound to use ordinary care to keep the sidewalk and street, where its work was in progress, in a condition of reasonable safety for the passing public, including plaintiff. It was admitted that defendant's agents and employees placed on the sidewalk the rail which tripped plaintiff and caused him to fall and be injured. Reeves v. Larkin, 19 Mo. 192; Chicago v. Robbins, 2 Black 429. Defendant would also be clearly liable for its negligence even if the city may likewise have been responsible. Any one who directly contributes to cause such an injury is liable to the victim for all the consequences thereof. Newcomb v. Railroad, 169 Mo. 430; Harrison v. Light Co., 195 Mo. 623; Bragg v. Railroad, 192 Mo. 360. (2) Plaintiff was not guilty of negligence as a matter of law, as the circumstances demonstrate. The "buckets" or cans hanging over the sidewalk, the inky darkness, and the other *res gestae* should all be considered. The plaintiff had no reason to expect such a snare for his feet. His conduct was for the jury to determine as careful or negligent, and they properly decided it to be such as a person of ordinary prudence would exercise in the same circumstances. There was no error in submitting that issue to the jury. Lindsay v. City, 195 Mo. 166; Wiggin v. City, 135 Mo. 558; Bassett v. City, 53 Mo. 290; Merrigan v. Railroad, 154 Mass. 189; Sherry v. Railroad, 104 N. Y. 652. (3) Expressions of pain or other declarations to a physician, regarding the condition of a patient, "of the nature, symptoms and effects of the malady," are admissible evidence, and are, in reality, parts of the *res gestae* of the ailment itself. Marr v. Hill, 10 Mo. 321; Wardlow v. Perryman, 27 Mo. 279; Insurance Co. v. Moseley, 8 Wall. 397; Harriman v. Stowe, 57 Mo. 93; 1 Greenl., Evid., sec. 102. (4) The point urged in regard to the testimony of Dr. Raines is founded on

an erroneous view of that testimony. The matter criticised had been previously admitted without objection, which should dispose of that assignment of error. McCaffrey v. Railroad, 192 Mo. 154. This rule is so widely extended as to include even incompetent testimony so admitted. Hickman v. Green, 123 Mo. 173. An objection to testimony given on a question put without objection after the objecting party has thus taken the chance of a favorable answer, is too late and should not be sustained. Maxwell v. Railroad, 85 Mo. 106; Foster v. Railway, 115 Mo. 182. (5) The verdict is not excessive. It is founded on only three elements of damage: (a) Physical or mental pain and suffering; (b) Expenses paid for medical care and treatment as shown "from the evidence;" (c) Permanent injury, if any, including loss of virility, if found. It is idle to argue, at any length, the amount of this verdict for $4500 when the jury has found such injuries as are described to have directly resulted from defendant's negligence. (6) The omission to mention a limit of $150, as to recovery for expenses of medical care and treatment, was immaterial, since the instruction directs the jury to find for plaintiff only for such expenses "as you believe from the evidence" became necessary, etc. The "evidence," without dispute or contradiction, showed by items the precise figures paid for said medical expenses to be $108. As these items were by the instruction the only ones allowable, and were definite, certain and within the $150 claimed by the amended petition, there could be no possible harm, prejudice or error in the instruction on that point. Hannon v. Transit Co., 102 Mo. App. 222. The cases cited for appellant all involve elements which are indefinite and uncertain in nature or amount; and therein is a vital distinction from the case at bar. (7) Moreover, the said instruction is "entirely correct." If it had said (as to the item of medical care) "not exceeding $150," it would have been challenged as erroneous in "authoriz-

ing a recovery for that sum for medical care and treatment," when the testimony (as above) only warranted recovery of $108. But as it reads, it is right. Heiberger v. Telegraph Co., 113 S. W. 730; Carter v. Baldwin, 107 Mo. App. 227; Gorham v. Railroad, 113 Mo. 410. If defendant imagined that the jury might sail beyond the evidence, in an improper search for larger figures on this phase of the case, defendant should have asked a further instruction on that point. As the one given stood, it was correct. Carter v. Baldwin, 107 Mo. App. 227; Gorham v. Railroad, 113 Mo. 410; Browning v. Railroad, 124 Mo. 55.

GOODE, J.—Plaintiff asks damages for a personal injury alleged to be traceable to defendant's negligence. It was suffered in a stumble over an iron rail extended across the sidewalk on the west side of Tower Grove avenue in the city of St. Louis. The rail was four inches wide at the base, three and one-half inches high and at an elevation of eight inches above the surface of the walk. Defendant was engaged in excavating a sewer in an alley midway between Norfolk and Swan avenues, east and west thoroughfares, and intersecting Tower Grove avenue, a north and south thoroughfare. A machine called a "tower wagon" from fourteen to sixteen feet long and nine to ten feet high was used in the work. No description imparting a clear notion of this machine is given in the testimony, but we learn the tower wagon, or some part of it, was moved by steam power forward and backward in the alley, on two rails which extended across the sidewalk of Tower Grove avenue, as said, eight inches above the walk. Connected with the tower wagon and overhanging the sidewalk six or seven feet above it, were large cans used to hoist and carry the dirt taken out of the sewer trench. The tower wagon, boiler and engine stood in the driveway of the street nearer the east than the west side, but leaving plenty of room for a wagon to drive

between them and the east curb. A street lamp stood on that side of the street a foot or two north of the alley, but the light from this lamp was intercepted by the engine, boiler and tower wagon standing in the street some ten feet from the west curb, and instead of a pedestrian on the west sidewalk being helped by the light in crossing the alley, he passed into the shadow cast by said machinery. The accident happened around six-thirty o'clock p. m. of December 5, 1905. Plaintiff, who resided on Swan avenue, the rear of his lot abutting on the alley in which the excavating was in process, was walking in the middle of the west sidewalk of Tower Grove avenue on his way home from his daily work when he fell. When fifty feet away he saw the engine and boiler and the framework of the tower wagon hanging above the walk and extending back into the alley, and knew those appliances were used in digging the trench. As he walked he looked straight ahead, or northward, passed under the framework, struck his leg, between the knee and ankle, against the south one of the two rails extended above the walk, was thrown down and injured. He testified no danger lamps were placed above the rail to warn pedestrians, and that it was very dark under the framework, which he could see, but could not see the rails. On arising after his fall, he stooped to learn what had tripped him and then saw the rails. He went on home, not thinking his hurt serious, but awoke in the night suffering from pain in his head and back; was treated by a doctor every other day for two or three weeks and suffered from pain for at least six weeks. His leg was black with bruises. He further testified he had been unable to lie down at night and sleep since the injury; many nights did not sleep over four hours, though before the accident he had slept soundly, had consulted four doctors and at the time of the trial was still consulting doctors; had consulted one of them one hundred or one hundred and fifty times. Plaintiff testified complete

sexual impotency had resulted from the fall. Physicians swore he was neurasthenic and the condition might have been caused by the fall; found signs of laceration of the ligaments between the third, fourth and fifth lumbar vertabrae at lower end of spine and effusion of blood there. As to his knowledge of the location of the machinery and rails, plaintiff said he had seen the framework and scaffolding of the tower wagon from his back porch, but could not see the rails across the sidewalk; that when hurt he was walking straight along and saw there was enough room for him to pass under the framework, and never thought of being tripped by anything—could not see anything that would trip him. A young lady, who was about fifty feet behind plaintiff, saw him as he walked ahead of her until he fell and disappeared. She said she could see the framework of the machinery above the sidewalk for fifty feet, that plaintiff shouted to her after he fell there was something across the walk, and just before she reached the rail she saw it as she was about to step over it; she swore there were no lights and it was quite dark under the framework. Another witness testified she passed the place about half past six o'clock; it was dark and she could not see the rail until she got to it; could not see what was on the sidewalk and bumped against the rail. A man who passed there about eight o'clock in the evening said there were no lights; the rail was about a foot above the sidewalk and "the machine was not on the sidewalk the night before plaintiff was injured." When this witness got near the framework he saw the rail. A witness who conducted a grocery store thirty-five yards from the scene of the accident, said his recollection was the rails were put across the sidewalk about two o'clock in the afternoon of the day of the accident. The charge of negligence in the petition is leaving the rails across the "public street and sidewalk at night, without any light or other signal about them to warn plaintiff or others, so that plain-

tiff and other pedestrians walking along said sidewalk would not trip and fall over said rails, as did plaintiff to his injury; that said defendant, George G. Prendergast Construction Company, knew there was no light or signal as aforesaid, or that if it did not know, could and should have known there was not by the exercise of ordinary care and in time to have prevented injury to plaintiff."

1. We are pressed to hold the court below should have directed a verdict for defendant on the ground plaintiff was negligent in endeavoring to pass under the framework of the machinery without investigating the condition of the walk, when according to his own testimony it was so dark he could not see what was under the framework, and to hold further that in undertaking to pass along the sidewalk without investigating, instead of stepping into the street and going around the tower wagon, plaintiff chose an obviously unsafe way when there was a perfectly safe one. In disposing of this contention we should remember the jury might find defendant was negligent in obstructing the sidewalk with rails eight inches above it without putting out danger signals to warn passersby. [Norton v. Kramer, 180 Mo. 536; Perigo v. St. Louis, 185 Mo. 274.] To say plaintiff might not proceed along the sidewalk and pass under the framework if there was nothing to warn him it was dangerous to do so, instead of making a detour into the street, would deny him his legal right to act as men commonly do under like circumstances. Defendant's counsel insist the framework of the machinery operated by defendant was visible fifty feet away and was actually seen by plaintiff, and this was sufficient warning of danger. The portion of the machinery visible to plaintiff was either out in the street and hence no obstruction of the walk, or hung so far overhead one might pass under it in safety. The visible portion did not necessarily import notice there were

140 App.—12

invisible parts across the walk; and that they would notify a pedestrian of the latter fact depended on a variety of circumstances: such as whether a machine of the kind was always worked in connection with rails laid across sidewalks, whether plaintiff knew this, whether he knew in the particular instance it was true and whether if he did know it, he was so remiss in not remembering it at the time of the accident as to be guilty of want of ordinary care. Generally speaking, persons walking along the sidewalks of a street when and where it is dark, have the right to take it for granted the sidewalk is free from dangerous obstructions; and, indeed, must do so if they are to go about with reasonable speed and convenience. [Coffey v. Carthage, 186 Mo. 573, 585.] There might be circumstances under which a traveler would be careless if he did not grope his way in the dark, or go into the street; but no such circumstances existed in the present case as would justify a court in saying plaintiff should have done one or the other of those acts: for the proof was not conclusive that he knew the rails were across the walk, either from having seen them there, or from knowing they were an inseparable concomitant of the tower wagon; on the contrary there was evidence they only had been put across the walk a few hours before he fell over them. To our minds this was a perfectly clear case for the jury on the questions of plaintiff's contributory negligence and assumption of the risk.

2. Error is assigned on an instruction granted for plaintiff regarding the measure of damages. In this instruction the jury were told to allow plaintiff in case a verdict was given for him, reasonable compensation for any physical or mental pain or suffering which had resulted directly from such injuries as the jury might find the accident had caused, and for any expense paid for such medical care and treatment as the jury might believe from the evidence became necessary in consequence of the injury. The contention at this point is

the petition only claimed $150 on account of medical care and treatment, whereas the instruction put no limit on the amount the jury might allow. The total cost to plaintiff in that regard was proved to have been $108; and as the evidence was precise on the issue, and the jury were told, in effect, they should only allow so much for it as the evidence showed was necessarily incurred, omitting to prescribe a maximum assessment could not have been harmful. If one were to be prescribed in the instruction, it should have been the amount proved, which was exact, and not what was prayed; for of that there was no proof. We are cited to Smoot v. Kansas City, 194 Mo. 513, as supporting defendant's position; but in said case the petition prayed $250 for medical attendance and the court instructed the jury they might allow $350—a palpable error.

3. A physician who attended plaintiff was asked to state what plaintiff complained of and said his troubles were, and what, if any, expressions or statements plaintiff made regarding his condition and his suffering or ailments at the times when the physician subsequently treated him. In answer the witness said plaintiff continually complained of "misery in the lumbar region of the back and inability to sleep." To the court's refusal to strike out this answer defendant excepted and now assigns error for its admission. The argument is this testimony was hearsay, as it was a statement by the physician of a history of past symptoms related by the patient. On the contrary it was testimony regarding complaints or statements of present symptoms made by plaintiff whenever the doctor treated him. The latter's opinion about plaintiff's condition was based on them, and they might be given in evidence in connection with the opinion and as its basis. [1 Greenleaf, Evidence (16th Ed.), sec. 162b; Barber v. Merriam, 11 Allen 322; Insurance Co. v. Mosley, 8 Wall. 397; Holloway v. Kansas City, 184 Mo. 19.]

4. A physician who examined plaintiff in November 1906 and found him then suffering from neurasthenia and insomnia, testified his condition could have been caused by such a fall, as he had experienced, saying further he (the physician) could form no opinion regarding whether, in fact, it had been caused by the fall, as many things will cause such a condition of health. The physician's statement of an opinion that plaintiff's symptoms could have come from the fall, was excepted to and is said to have been an invasion of the jury's province. We cannot see how it was. As a medical expert he might testify regarding the possibility of the accident leading to such results, because the jury, when enlightened on this point, would be the better able to determine from all the facts in proof, such as plaintiff's previous state of health, the date of the onset of the supposed symptoms, if they had in truth been felt, whether they were due to the accident or to something else. The question held competent in Wood v. Railroad, 181 Mo. 433, 449, was like the one challenged here, and the precise objection was overruled in Turner v. Newburgh, 109 N. Y. 301, 308. There the court said:

"The questions addressed to the physicians calling for their opinions as to whether the physical condition in which they found the plaintiff to be, upon their examination of her, could have resulted from a fall, were not objectionable and infringed upon no rules of evidence. We see no objection to the expression of opinions by competent medical experts upon an ascertained physical condition of suffering or bad health, as to whether that condition might have been caused by or be the result of a previous injury."

5. Complaint is made that the jury were authorized to allow damages for permanent loss of virility, though permanent loss of it was not alleged. This point is without merit. [Cook v. Railroad, 19 Mo. App. 329; Golden v. Clinton, 54 Mo. App. loc. cit. 117; Lewis v. Independence, Id. 183.]

6.  The last assignment is that the verdict was unreasonably heavy.  It was for $5,000, of which plaintiff remitted $500.  If his testimony is to be believed, and the jury had the right to believe it, the consequences of the injury were severe, but we find no evidence to prove they were permanent.  The impotent condition was testified to by himself, but there was evidence indicating that, if it existed, it was a part of his general neurasthenic state and would pass away with the latter.  The testimony of two physicians discredited plaintiff's testimony in this regard.  They swore they had examined him and detected no sign of this infirmity and that there would be discoverable physical indications if he was suffering from it.  The physician who had attended him gave no testimony on the subject. What impresses us is the total lack of evidence to prove he was permanently disabled in this regard.  As the law now stands we must say whether the verdict is excessive, and correct it if we think it is.  [Chitty v. Railroad, 148 Mo. 64.]  In our opinion $3,500 will be ample compensation for such injuries as the evidence, fairly weighed, shows plaintiff has suffered.  Wherefore, if $1,000 is remitted from the amount of the judgment below in ten days from the date of this opinion, the judgment will stand affirmed; otherwise it will be reversed and the cause remanded for another trial.  All concur.