JOHN M. SCHLINSKI, Respondent, v. CITY OF ST.
   JOSEPH AND METROPOLITAN PAVING
   CO., Appellants.

Kansas City Court of Appeals, May 5, 1913.

1. **MUNICIPAL CORPORATIONS: Obstruction in Street: Negli-
gence: Liability of City and Contractor.** Where the city had
authorized its codefendant to pave and improve a street, and an
ordinance was in force requiring persons using the streets for
such purposes to place red lights on obstructions left in the
street and to keep open passageways thereon, and the contract
with the paving company required it to obey said ordinance,
the failure of the paving company and the city to place red
lights on the obstructions in the street by reason of which plain-
tiff, in walking on said street at night fell over said obstructions
and was injured, was negligence rendering both company and
city liable.

2. **NEGLIGENCE: Municipal Corporations: Delegation of Duty.**
The city rests under the primary bounden duty to keep its
streets and sidewalks in a reasonably safe condition for travel,
and it can neither delegate nor avoid that duty. If an injury
is caused by the violation of that duty then the principle that
an employer cannot be held liable for the negligent act of an
independent contractor does not apply.

3. **————: ————: ————: No Notice to City Necessary.**
Where the city authorizes an act to be done out of which the
negligence and injury grows and the city has a primary boun-
den duty concurrent with the doing of the act, no notice to
the city of the negligent act is necessary.

4. ——: ——: **Question for Jury.** Although plaintiff knew, in a general way, work was being done on the street, yet he had no knowledge of the particular obstruction causing his fall and denied having such knowledge. In such case knowledge cannot be imputed to him as matter of law. Nor can it be said that plaintiff was negligent as matter of law in walking along the street in the dark.

5. ——: ——: ——: **Danger Lights: Street Open for Travel.** Whether a street is withdrawn from the public during the improvements is not a question of law but of fact for the jury. And where there is a danger light over an obstruction on the sidewalk, on account of which plaintiff stepped into the street to avoid such obstruction, the fact that there were no danger signals out in the street was sufficient to justify plaintiff in assuming the street was reasonably safe since the street was not closed to travel, especially where the injury was caused, not by the condition of the street on account of the work, but by an obstruction left in it.

Appeal from Buchanan Circuit Court.—*Hon. W. D. Rusk,* Judge.

AFFIRMED.

*W. B. Norris, O. E. Shultz, P. A. Slattery, O. C. Mosman* and *Vinton Pike* for appellant.

(1) Plaintiff's own negligence contributed to the injury he complains of. It was the sole cause of his fall. The jury should have been instructed to return a verdict for defendants. McHugh v. Paving Co., 106 N. Y. S. 165; Steinbrenner v. Forney, 127 N. Y. S. 623; Hunter v. Montesana, 111 Pac. 571; Compton v. Revere, 179 Mass. 413. (2) When the obstruction created in the street is purely collateral to the work contracted to be done, and is entirely the result of the wrongful acts of the contractor, the employer (defendant city) is not liable. Shute v. Town of Princeton, 59 N. W. 1050; City of Independence v. Slack, 134 Mo. 66; Press v. Penney, 242 Mo. 98, 145 S. W. 458; O'Hara v. Gas Light Co., 148 S. W. 884; McGratte v. St. Louis, 215 Mo. 209.

*Monte H. Craig* and *C. A. Mosman* for respondent.

A city owns and controls its streets as a trustee for the public. It, therefore, stands charged by the law with the primary and bounden duty of keeping them free from nuisances, defects and obstructions caused by itself or by third parties if it (in the latter instance) had actual or constructive notice in time to abate the nuisance, remove the obstruction, or repair the defect. It cannot shirk that duty or shift it over to others, or halve it with others; so much is clear law in Missouri. Welsh v. City, 73 Mo. 71; Oliver v. Kansas City, 69 Mo. 83; Carrington v. St. Louis, 89 Mo. 208; Russell v. Columbia, 74 Mo. 480; Beaudeau v. Cape Girardeau, 71 Mo. 395; Streeter v. Breckenridge, 23 Mo. App. 250; Hill v. Sedalia, 64 Mo. App. 501; Benton v. St. Louis, 217 Mo. 700.

TRIMBLE, J.—The defendant city of St. Joseph authorized the paving of Harvard street, a much traveled thoroughfare of that municipality, and entered into a contract with its codefendant, the Metropolitan Paving Company, to do the work. During the progress of the improvement plaintiff, in walking along the street at night, fell over certain obstructions placed there by the paving company and was injured. He sues charging negligence on the part of both defendants in failing to place bariers so as to warn travellers of such obstructions and in failing to light said street or to place red lights or danger signals at the place where said obstructions were located.

Plaintiff had lately moved into his residence on the south side of Harvard street, being the second house east of an alley running north and south and crossing said street at right angles. The house and lot between plaintiff and the alley were owned and occupied by a man named Swearingen. A tar boiler used by the paving company was standing some ten

feet or more from the curb out in Harvard street; about opposite the corner formed by the east side of the alley and the south side of Harvard street. In the alley and south of the sidewalk on the south side of Harvard street was a tar kettle used by the paving company. This kettle was not far from the west line of the Swearingen lot. At the corner formed by the west line of the alley and the south line of Harvard street a red light danger signal hung over the sidewalk. In the center of Harvard street and on a line with the east line of plaintiff's lot, if prolonged to the center of the street, hung a city electric arc lamp, but it was not lighted on the night of the injury. There was no other city lamp in that vicinity and no red light at or near the tar boiler or barrels sitting there. These barrels, twelve or fifteen in number, were empty and piled upon the walk east of the alley, while west of the alley was a sewer inlet, the top of which had been removed to raise it to the grade, as the contractor had agreed to do, leaving a hole; and a large pile of dirt lay on the sidewalk at that point. From the edge of the tar boiler down to the gutter surface there were two planks side by side, the ends of which rested against the curb. The contract for the improvement contemplated the use of the street by the public during the progress of the work. The work on the street commenced somewhere about the latter part of September and the first work done was the laying of the cement sidewalks which were finished and had been thrown open to and used by the public. Plaintiff's fall occurred on the night of November 8, 1911.

Prior to the injury and during the progress of the work, the street had been torn up and in a rough condition. But at the time of plaintiff's fall such progress had been made that while the street was not yet finished, yet this rough condition no longer existed and it was used by pedestrians and to some extent by teams. The surface of the street was covered evenly

with crushed rock of small size, such as are commonly used for the top course in a macadamized street, and there was no more danger in walking on the street where plaintiff was hurt than on any other freshly macadamized roadway, if it had not been for the tar boiler and the plank extending from its top down to the surface of the gutter against the curb.

On the night of the injury plaintiff left his residence and went to the sidewalk in front of his house. From thence he proceeded west along the sidewalk until he noticed the red light hanging over the sidewalk, at the place hereinbefore indicated, and saw that there was some kind of an obstruction there. Being thus notified of danger on the sidewalk and seeing no danger signals out in the street, and not knowing of the tar boiler and planks extending therefrom, he turned off the sidewalk out into the street and proceeded on his way west to get by the obstruction and red light on the sidewalk. It was dark and the tar boiler and planks could not be seen. He had proceeded but a little way when his ankles struck these planks leading from the tar boiler, and he was thrown heavily to the pavement injuring his shoulder in a way to cause him considerable pain and rendering him unable to use his arm, to perform manual labor or to button his clothes. The doctor testified that in his opinion it would get well in about five or six months. The jury returned a verdict for $500. Defendants appealed.

There was introduced in evidence a city ordinance requiring every person having the use of any portion of a street or sidewalk for any purpose to place red lights in a conspicuous place in front of such obstructions from sunset until sunrise each night during the time such obstruction remains. And the contract between the city and the paving company required the latter to obey all ordinances in relation to maintaining signals as to obstructions in the street, to keep

open passageways, and to save the city harmless from all suits in consequence of any negligence in guarding such obstructions.

It is urged that plaintiff was guilty of contributory negligence as matter of law, and that the demurrer to the evidence should have been sustained.

It was not shown that plaintiff knew the tar boiler and planks were there or that any obstructions were out in the street. True, he knew, in a general way, that men were working on Harvard street, had seen teams hauling rock on the street but he knew little about the work and thought they were doing some repair work; he never went to see. In going to and from the packing house where he worked he went by way of the alley in the rear of his property which was the shortest route. He had never seen the tar boiler nor the planks before and did not know the men were using them. He denied positively that he knew the obstructions were there, and knowledge of their existence could not be imputed or attributed to him in the face of such denial. [Roberts v. Piedmont, 148 S. W. 119.] It must be borne in mind that it was not a torn up condition of the street, or a hole or other iregularities in the surface of the street, inevitable concomitants of the work, that caused the injury. But it was these planks left in a sloping position above the surface and crosswise of the street that caused his injury. Knowledge of these was not shown and cannot be imputed to plaintiff. [Russell v. Columbia, 74 Mo. 480; Wiggins v. St. Louis, 135 Mo. 558, l. c. 564, 565.]

Nor can it be said that plaintiff was negligent in walking along the street in the dark. [DeCourcey v. Prendergast, 140 Mo. App. 169, l. c. 177; Perrigo v. St. Louis, 185 Mo. 274; Knight v. Kansas City, 138 Mo. App. 153, l. c. 159.] Besides, he would not have left the sidewalk and gone into the street except to get around the obstruction on the sidewalk of which the

red light at that point warned him. Inasmuch as he was warned off the sidewalk he had the right to assume that the street was all right or it also would be guarded by a light, or, that if both street and sidewalk were impassable, the street would not be left open without barriers. Appellant, however, contends that plaintiff is not in a position to complain of insufficient barricades; that barricades are only of use to advise a stranger that the way is dangerous. This assumes that plaintiff knew it was dangerous, and further assumes that the street was not open to travel and that plaintiff knew that. But the question whether the street had been withdrawn from public use was a question of fact submitted to the jury and by them it was found not to have been withdrawn. The demurrer was properly overruled.

Instruction "A" asked by defendant was refused. We think properly so, first, because it told the jury plaintiff had made certain admissions which he had not made; second, because it, in effect, told the jury that when plaintiff left the sidewalk, when warned by the red light on it, and went into the street, he assumed all risks even the risk of defendant's negligence.

Instruction "B" was a demurrer to the evidence which we have already said was properly refused.

Instruction "C" declares in effect that, as to one who knows in a general way that a street is being improved, there is no duty to place red lights on obstructions or to comply with any other provisions of the city ordinance in relation to precautions to be taken in doing the work. Its refusal was not error.

Instruction "D" was properly refused because it declared as a matter of law that the mere fact the street was being paved withdrew it from public travel. This is a question of fact and not of law. A part of the street may be withdrawn and the other part left open to public use. [Phelan v. Paving Co., 227 Mo. 666.]

The instruction was also erroneous in that it declared plaintiff assumed every risk, even the defendants' negligence.

Instruction "E" told the jury they "must infer" certain facts which were questions to be determined by them upon a consideration of the testimony on both sides.

Complaint is made of respondent's instructions on the ground that they omit or "ignore as immaterial plaintiff's intimate knowledge of the street." In the first place, it was not proven that he had any "intimate knowledge" of the street. In the second place, the instructions explicitly required the jury to find "that the plaintiff was not aware of the tar boiler and tank in said street and the danger of walking along said street on account of the obstruction therein," and that he was "walking along said street in the exercise of ordinary care, etc." before they could find a verdict for him.

Another contention is made that "where the obstruction created in the street is purely collateral to the work to be done, and is entirely the result of the wrongful acts of the contractor, the employer (defendant city) is not liable." This overlooks the fact that the defendant city rested under a primary bounden duty to keep its sidewalks and streets in a reasonably safe condition for travel, in this case by maintaining lights and barriers. This duty it can neither delegate nor avoid. [Sappington v. Centralia, 162 Mo. App. 418, l. c. 421; Welsh v. St. Louis, 73 Mo. 71, l. c. 74; Village of Jefferson v. Chapman, 127 Ill. 438; Benton v. St. Louis, 217 Mo. 687, l. c. 700; Lindsay v. Kansas City, 195 Mo. 166; Anderson v. Fleming, 160 Ind. 597.] In most of the cases cited by appellant on this point there was no such bounden primary duty resting on the city. Hence they are not in point. In the others the facts are wholly different rendering the cases inapplicable to the question now considered.

Counsel for the paving company cite Bentley v. Telephone Co., 142 Mo. App. 215, to relieve it of liability. The case does not so hold. In that case it was not held that the company was not liable on a proper showing, but that the negligence complained of was not the proximate cause of the injury. Proof of the ordinance requiring the paving company to put up lights and barriers, and of its failure to comply therewith made a prima facie case of negligence against it. [Ryan v. Kansas City, 232 Mo. 471, l. c. 485.] Especially when it is shown that it contracted that it would observe all ordinances in relation to obstructing streets, maintaining signals and keeping a passageway open.

A final contention is made that the charge against the city is that it negligently placed or caused to be placed a board in the street, and there is no allegation nor proof that the obstruction had been in the street for a sufficient time to create a duty on the city to remove it. This is a misconception of the petition. The negligence charged against the city is not in placing the board there but in failing to place lights and barriers on the obstructions its codefendant had by the city's authority placed in the street. Where the city has authorized the placing of obstructions in the street, notice to the city is not necessary to render it liable. [Hanniford v. Kansas City, 103 Mo. 172, l. c. 181.] "Where a city grants permission for an act to be done in a street, then the law charges it with notice of everything which is done in pursuance of that act, and, of course, the party who performs the act is not entitled to notice for the obvious reason that he has actual knowledge thereof." [Mehan v. St. Louis, 217 Mo. 35, l. c. 46.] Having carefully gone over the record and the points made by appellant, we find no reversible error and, therefore, must affirm the judgment. So ordered. All concur.