CARL LEWIS, BY HIS NEXT FRIEND, J. L. LEWIS, DEFENDANT IN ERROR, v. KANSAS CITY, MISSOURI, PLAINTIFF IN ERROR.—122 S. W. (2d) 852.

Kansas City Court of Appeals. June 13, 1938.

*George Kingsley,* City Counselor, and *John J. Cosgrove,* Assistant City Counselor, for plaintiff in error.

*Harding, Murphy & Tucker* for defendant in error.

REYNOLDS, J.—The original action herein was begun in the Circuit Court of Jackson County, Missouri, at Kansas City, by J. L. Lewis as next friend for Carl Lewis, a minor seven years of age, as plaintiff, who is now defendant in error herein, against Kansas City, Missouri, and the Atlas Electric Company, to recover for personal

injuries alleged to have been received by said minor from falling into an excavation in Swope Park, a public park in Kansas City, the plaintiff in error herein, and coming in contact with underground, exposed wires therein. There was a judgment and verdict for the plaintiff for $2000. After an unsuccessful motion for a new trial, the defendant Kansas City appealed to this court but later dismissed its appeal and sued out this writ of error.

On Saturday morning, July 6, 1929, Mr. Leslie L. Aulgur, superintendent of maintenance of the Park Department of Kansas City, Missouri, was notified by Mr. Hoppe, superintendent of Swope Park, that the lights in the shelter house in the park near the main entrance had gone out. Swope Park is a public park belonging to the plaintiff in error, to which the public generally is invited and has access. The park department at that time had no regular electrician in its employ. Aulgur called a Mr. Hopkins, doing business as the Atlas Electric Company, and told him the lights were out in Swope Park and directed him to go out and make the repairs and get the lights on. He did not know at that time what the trouble with the lights was and what would be required to be done to get them on. Hopkins was given complete control of the work.

The defendant in error's evidence tends to show that, on the following day, Sunday, July 7, two young ladies who were in the park heard a child crying. They looked around but could not see anyone at the time; shortly afterwards, upon starting to leave the park and while walking over to the mall to get to their car, they passed an open ditch and, looking, saw the defendant in error therein. This ditch had been dug by Hopkins in locating the trouble and making the repairs, he having begun work thereon that morning. The defendant in error was hanging by his shoulders through a ladder, which had been laid on top of the ditch. From the time they first heard the cry of the boy to the time they found him was only a short while, perhaps twenty-five or thirty minutes. This ditch was about six feet long and two feet deep and slightly wider than the ladder which covered it and was about three hundred feet south and west of the shelter house. There was one rung missing from the ladder. These young ladies had been within a range of one hundred or two hundred feet of the ditch possibly an hour before they heard the cry. While they were there, they noticed some workmen about the ditch. The workmen had left some thirty or forty minutes—or it might have been an hour—before they heard the cry. How long the boy had been in the hole before the attention of these young ladies was attracted to the cry, they did not know. They saw the workmen go away. It was some time later when they heard the boy cry, about an hour. The defendant in error's evidence further tends to show that the accident was reported to Mr. Aulgur at his home by Mr.

Hoppe about 4:30 P. M. Sunday evening. Aulgur went to the park and observed the ditch. He looked into the hole and saw some underground wires or cables that furnished electric current to the shelter house. These cables were being repaired. There was no barricade around the ditch.

There is evidence that the defendant in error, Carl Lewis, received severe electric shocks and burns from the exposed wires and was seriously injured thereby.

The evidence tends to show that he was alone when he went to the park; that he got hurt about two or two-thirty o'clock on Sunday afternoon; and that he rode on his tricycle to within about ten feet of the ditch and went over to the ditch to see what was in it and stumbled and feel into it.

The statement of H. H. Hopkins was read to the jury, in which he stated that he had full and complete charge of the work, using his own judgment as to what was necessary to be done and the manner of doing the same; that neither Aulgur nor any representative of the plaintiff in error exercised any control over the work or gave any orders or directions as to what should be done or how the same should be done; that, after making an inspection, he decided that an excavation would have to be made in the park, south of the shelter house, in order to expose some underground electric wires; and that this excavation was begun Sunday morning and carried on during the forenoon and early part of the afternoon by his employees.

At the close of the case of the defendant in error, the plaintiff in error requested an instruction in the nature of a demurrer directing a verdict in its favor, which was denied by the trial court. The cause was thereupon submitted to the jury, and a verdict for the defendant in error resulted, as stated.

We are met at the threshold of this case with the contention on the part of the defendant in error that the bill of exceptions herein, although filed and made a part of the record in the trial court, is not before us for review in that it was not filed and made a part of such record until February 26, 1938, and was therefore not a part of the record at the time that our writ was issued on May 13, 1937, directing the trial court to transmit a transcript of the record in that court to this court, or at the time that such writ was returnable to the October term, 1937, of our court or within the year following the rendition of the judgment on May 21, 1936, in the trial court. and that we have before us for review only the record proper.

Section 1036, Revised Statutes of 1929, provides that a writ of error must be sued out within one year after the rendition of the judgment a review of which is sought and not thereafter.

We are not unmindful of the fact that, in the absence of a bill of exceptions forming a part of the record, we have only the record

proper to review. Where, however, a bill of exceptions is properly made a part of the record, our review extends to it as well as to a review of the record proper. [Swem v. Bick, 87 Mo. App. 29; State ex rel. Hermann v. Green, 230 Mo. App. 805, 76 S. W. (2d) 432; Spotts v. Spotts, 331 Mo. 917, 55 S. W. (2d) 977; 4 C. J. S., p. 75; Nemela v. Coca-Cola Bottling Co. of St. Louis (Mo. App.), 104 S. W. (2d) 773; Gabbert v. Evans, 184 Mo. App. 283, 166 S. W. 635.]

It is true that a bill of exceptions does not become any part of the record until ordered made a part thereof by the judge of the trial court and until signed and filed (Ricketts v. Hart, 150 Mo. 64, 51 S. W. 825); but, when filed within the time required by law for the filing thereof, it becomes a part of the record. The filing of a bill of exceptions as a prerequisite to the issuance of a writ of error is no more necessary than the filing of a bill of exceptions on an appeal before the appeal is taken. The right to a writ of error or to an appeal exists in the same action at the option of the party. While the proceeding to obtain a writ of error is in the nature of a new action, its purpose is to invoke a review of the record and to set aside the judgment in the principal case. An appeal has the same purpose in view. It is regarded as a continuation of the original suit, while a writ of error is regarded as a new suit; and in such respects only are they contradistinguished. In all other respects, aside from the procedure necessary to obtain a writ of error and the procedure necessary to obtain an appeal, both classes of cases possess the same general characteristics, their purpose being to bring the principal case to the appellate court for review and to vacate the judgment therein. [City of Moberly v. Lotter, 266 Mo. 457, 181 S. W. 991.]

The scope of the appellate review by writ of error is the same as that upon an appeal. When once an appellate court obtains jurisdiction to review a case, whether on appeal or by writ of error, not only the disposition to be made of the case instituted by the method of review but the scope to be taken upon the review is the same in either instance, depending upon whether alleged errors appearing in the course of the trial have been preserved in a bill of exceptions so as to extend the review beyond the face of the record proper. [State ex rel. Hermann v. Green, *supra.*]

Under section 1034, Revised Statutes of 1929, writs of error are writs of right and shall issue of course upon a final judgment. Under section 1036, *supra,* they shall issue within one year after judgment.

Our writ was issued within one year after the final judgment sought to be reviewed herein. It is true that at the time our writ was issued, the bill of exceptions containing the proceedings had upon the trial and the alleged errors in the course thereof remained to be made up. The facts, however, to be included and incorporated

therein existed at that time. It was afterwards made up, signed, sealed, and filed in the cause and made a part of the record in the manner required by law and within the time allowed by law therefor and was certified to this court by the trial court in its transcript as a part of the record in this cause. That the transcript was not filed in this court until after the beginning of the October term, 1937, to which the writ was made returnable, is, upon the record, now unimportant.

The contention is ruled against the defendant in error.

The only assignment of error made by the plaintiff in error challenges the action of the trial court as erroneous in refusing its requested instruction in the nature of a demurrer directing a verdict in its favor. This challenge rests in the main upon the contention that the contractor who dug the ditch in which the defendant in error fell and was injured, the Atlas Electric Company, was an independent contractor and had exclusive charge of the work in making the repairs to the lighting system of the Park Department serving Swope Park, which involved the making of the ditch and the exposure of the underground electric wires therein, by reason of which the defendant in error was injured, by falling into said ditch and contacting with said wires or with electric fluid escaping therefrom; that the plaintiff in error exercised no control whatever over such work and gave no directions as to what should and should not be done by the contractor in locating the trouble with the lighting system or as to what repairs should be made in remedying such trouble; that it did not direct the making of the ditch or the exposure of the wires and had no knowledge that it was to be dug or that such wires were to be exposed and no reason to anticipate that it would be dug and such wires exposed; that it had no representative or agent on the job, inspecting it and directing the movements of the contractor or its servants or agents as to the methods to be employed and the plan to be followed in locating the trouble and in making such repairs; that everything to be done in the prosecution of such work was left wholly to the contractor; and that it was not liable for the defendant in error's injury or for the negligence, if any, of such contractor in making such ditch and in exposing said wires and in leaving the ditch with the exposed wires therein in an open and unguarded condition.

The plaintiff in error seeks to avoid liability on the theory that the negligent acts by reason of which the defendant in error was injured were those of the contractor alone, for which such contractor was alone responsible and for which it (the city) was not responsible. It seeks to bring itself within the rule which absolves the employer from the negligent acts of an independent contractor and absolves the employer from liability; but—considering that under the law the primary and bounden duty is imposed on it to use reasonable care to

keep its park grounds in a reasonably safe condition for use by those lawfully frequenting and using the same and that such is a continuing duty and that it cannot be discharged by employing another to do the work, even though an independent contractor, and delegating the performance of such duty to such other—it is clear that it cannot successfully do so.

It may be and doubtless is true that the Atlas Electric Company was an independent contractor and was negligent in digging the ditch in question and exposing the underground electric wires therein and in leaving such ditch and wires unprotected; yet, the plaintiff in error—if not liable for the negligence of the contractor in doing so—is nevertheless liable for its own negligence in failing to maintain its park grounds in a reasonably safe condition for the use of those lawfully thereon, a continuing duty, as stated, from which it could not discharge itself by employing the Atlas Electric Company as an independent contractor. [Plater v. W. C. Mullins Construction Co., 223 Mo. App. 650, 17 S. W. (2d) 658; Gerber v. Kansas City, 304 Mo. 157, 263 S. W. 432.]

From an early day in the judicial history of this State, it has been held that municipal corporations are bound to keep their streets and highways in a proper state of repair, free from obstructions; that, if they neglect to do so, they will be held liable for all injuries happening by reason of their negligence; and that, for the purpose of discharging the duty upon them, they are vested with extensive supervisory and controlling authority and cannot avoid their responsibilities by an arrangement with another party. [Blake v. St. Louis, 40 Mo. 569.] They cannot thus contract and provide against their own negligence or delegate the performance of a duty which is imposed upon themselves by law.

In Welsh v. St. Louis, 73 Mo. 71, it was held that cities are bound to maintain their streets in such condition that they will be reasonably safe for travel and that such a duty is a continuing one, which cannot be shirked or shifted to the shoulders of another.

In Russell v. Inhabitants of Town of Columbia, 47 Mo. 480, it was held to be the duty of a municipality to keep its streets free from obstructions and reasonably safe for travel in the usual modes and that it was liable for an injury from its neglect of such duty. It was further held that this duty could not be evaded, suspended, or cast on others by any act of its own. [2 Dillon on Municipal Corporations, art. 1027; Blake v. St. Louis, supra; Welsh v. St. Louis, supra; Bassett v. City of St. Joseph, 53 Mo. 290.]

In Carrington v. City of St. Louis, 89 Mo. 208, 1 S. W. 240, the Supreme Court declared it to be the unquestioned duty of a city to keep its streets and sidewalks in a reasonably safe condition for per-

sons traveling thereon and that it was liable in damages to one injured by reason of negligence in such behalf.

In Benton v. St. Louis, 217 Mo. 687, 118 S. W. 418, 1. c. 421, the Supreme Court said: "A city owns and controls its streets as a trustee for the public. It, therefore, stands charged by the law with the primary and bounden duty of keeping them free from nuisances, defects, and obstructions caused by itself or third parties if it (in the latter instance) had actual or constructive notice thereof in time to abate the nuisance, remove the obstruction, or repair the defect. It cannot shirk that duty, or shift it over to, or halve it with, others."

What was said in the last mentioned opinion concerning obstructions caused by third parties and the necessity for notice thereof in time to abate such obstruction cannot be held to apply to third parties who have contractual connections with the city or who act under its authorization or as its agents. [Oliver v. Kansas City, 69 Mo. 79; Russell v. Inhabitants of Town of Columbia, *supra*; Carrington v. City of St. Louis, *supra.*]

In Metz v. Kansas City, 229 Mo. App. 402, 81 S. W. (2d) 462, this court held that it was the duty of the defendant city to maintain its streets in a reasonably safe condition for the use of those traveling thereon.

In Capp v. St. Louis, 251 Mo. 345, 1. c. 356, 158 S. W. 616, in a review of the case of Carey v. Kansas City, 187 Mo. 715, 86 S. W. 438, the Supreme Court said that such case held, and properly so, that the law imposed on Kansas City the imperative duty of keeping the public parks thereof in a reasonably safe condition for the purpose of persons using the same for pleasure, amusement, or recreation and especially for children while engaged in their innocent sports, pleasures, and recreations. In the Capp Case, it was further held that the same law that requires a municipal corporation to keep its streets free from nuisances and reasonably safe for those who lawfully use them imposed on it the duty to keep its public parks in a reasonably safe condition for all lawfully frequenting and using them.

In Volz v. City of St. Louis, 326 Mo. 362, 32 S. W. (2d) 72, 1. c. 73, the Supreme Court said: "Municipalities are responsible for their failure to exercise ordinary care to maintain public parks in a reasonably safe condition as to children attracted there. That is, the municipality is responsible for negligence."

The petition in this case, after charging that the defendant H. H. Hopkins was doing business as the Atlas Electric Company and that Swope Park was a public park belonging to and operated by the plaintiff in error, to which the public stood invited to use such park as a playground and for recreation purposes, charges as follows:

"That on or about the 7th day of July, 1929, the defendant city,

acting through the defendant The Atlas Electric Company, its agent and employee, in attempting to make certain repairs on electric equipment in said park, caused to be opened up, dug and excavated a hole or excavation in the ground; that said hole or excavation opened and dug as aforementioned was about four feet long, three feet wide and three feet deep, and located about 400 feet south and west of the southwest corner of Number One shelter house in Swope Park; that at the bottom of said hole there were electric wires charged with a heavy load of electricity; that said wires were live wires, lying in said hole bare and uninsulated; that the defendants, after having caused said hole or excavation to be opened and dug in said park as aforesaid, did leave said hole, with said electrical wires therein, open and unguarded for a long period of time.

"That thereafter, to-wit, on the 7th day of July, 1929, plaintiff was playing in said park as invitee of defendant city, and because of the negligence of the defendants, as hereinafter set out, plaintiff fell into said hole and onto and into contract with said electric wires in the bottom thereof, causing plaintiff to be severely, and permanently injured, as hereinafter set out.

"Plaintiff states that defendants, and each of them, were careless and negligent in that they negligently and carelessly left said hole or excavation in an open and unguarded condition; that they were further careless and negligent in leaving the electrical wires as aforedescribed bare and uninsulated carrying heavy charges of electricity in an open and unguarded condition; that as a direct result of the negligent acts and each of them the plaintiff was injured in the following particulars, to-wit:" (Here follows a recital of the injuries.)

Recovery against both defendants therein was sought.

The petition proceeds on the thory that the negligent acts complained of, by which the park grounds were rendered unsafe, were not only the acts of the contractor, the Atlas Electric Company, for which it became liable, but were also the acts of the plaintiff in error, for which it became liable.

The record shows that the plaintiff in error authorized the contractor to ascertain the defects in its lighting system in the park and to locate and remedy such defects so as to put the lights on in its shelter house. It does not show that any restrictions whatever were placed on the contractor. Such contractor was authorized to do anything to reach the ultimate result sought that in its judgment might be necessary. The fact that it was not known at the time that the contractor was given such authority just wherein the difficulty with the lighting system lay or just what was necessary to be done to remedy it is immaterial. It was given authority to act, which included authority to do anything which in its judgment was necessary to bring about the ultimate result in view. The plaintiff in error must have known

that, if the difficulty with its lighting system could not be located within the shelter house where the lights were out, it would be necessary to go outside the building and inspect the electric wires leading from the outside into the building. It must have known that these wires were under the ground and that, in order to examine them and locate the difficulty, it was necessary to dig a ditch so that they might be reached. It having thus authorized the contractor, the contractor's acts became its acts; and it was bound to take notice of the digging of the ditch and the exposure of the wires and of the further fact that the contractor was leaving the ditch and the wires without proper protection; and it was itself bound to see that the park grounds were kept in a reasonably safe condition for use by these thereon, including their protection against the ditch and wires by proper barriers.

The suggestion that the failure of the contractor properly to protect the ditch and wires by barriers or otherwise was purely collateral and was entirely the result of its wrongful acts, for which the plaintiff in error is not liable, fails to take into consideration the primary duty upon the part of the plaintiff in error to keep its park grounds in a reasonably safe condition for use by maintaining lights and barriers over the ditch. This duty it could neither delegate nor avoid. [Schlinski v. St. Joseph, 170 Mo. App. 380, 156 S. W. 823; Burton v. Kansas City, 181 Mo. App. 427, 168 S. W. 889; Benton v. St. Louis, *supra*; Sappington v. Centralia, 162 Mo. App. 418, 144 S. W. 1112.]

Neither is the contention that the plaintiff in error is not liable because of the fact that it had neither actual nor constructive notice or knowledge that the ditch had been dug and the wires exposed and left in an unprotected condition a sufficient time before the defendant in error was injured to have remedied the unsafe condition created thereby before he was injured well made. [Haniford v. Kansas City, 103 Mo. 172, 15 S. W. 753.] The city authorized the digging of the ditch and the exposure of the wires; it stands charged by law with notice of everything which was done in pursuance of such authorization. [Mehan v. St. Louis, 217 Mo. 35, 116 S. W. 514; Schlinski v. St. Joseph, *supra*; Burton v. Kansas City, *supra*.]

The fact that the plaintiff in error did not expressly direct the contractor as to the details of the work to be done by it or to dig the ditch in question or to expose the wires therein and did not anticipate that such ditch would be dug and such wires exposed and left in an unguarded condition by the contractor and did not have an inspector on the job cannot avail it in this case. Under the terms of its contract with the contractor, the contractor was authorized to do anything that was necessary in its opinion to accomplish the final result to be obtained, which was the location and correction of

354

the defects in the plaintiff in error's lighting system so that the lights would go on in the shelter house. No restrictions were placed on the contractor. The plaintiff in error was bound by everything done by the contractor in the prosecution of such work. The plaintiff in error made such contractor its alter ego, and every act of the contractor became its act. That it did not anticipate the digging of the ditch and the exposure of the wires and the accidental injury to the defendant in error is immaterial. It is not necessary that it should have anticipated such matters. All that was necessary is that it authorized the doing of the work and that the contractor, under the authority granted it, negligently dug the ditch and exposed the wires therein and negligently left it unprotected and that the defendant in error's injuries followed as a natural consequence thereof.

The assignment is ruled against the plaintiff in error.

The judgment of the trial court should be and is affirmed. All concur.