William Perry Stephens, Surviving Executor of the Last Will and Testament of Nancy Stephens, Deceased, Appellee, v. Illinois Central Railroad Company, Appellant.

Gen. No. 8,351.

Opinion filed February 3, 1930.

VERNON W. FOSTER and GREEN, PALMER & JONES, for appellant; EDWARD C. CRAIG, WILLIAM G. PALMER and ORIS BARTH, of counsel.

DOBBINS & DOBBINS, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This was an action of trespass on the case originally brought by Charles H. Stephens and William Perry Stephens as executors of the last will and testament of Nancy Stephens, deceased, plaintiffs, against the Illinois Central Railroad Company and the City of Paxton, Illinois, as defendants, claiming damages on account of the death of Nancy Stephens. The Illinois Central Railroad Company was served with summons in the cause but the City of Paxton, the other defendant, was never served with summons, nor did it appear in the case. The case was therefore tried against the railroad company as the sole defendant. During the pendency of the case Charles H. Stephens, one of the executors of the will of Nancy Stephens, and one of the plaintiffs in the case as such executor, died. The death of Charles H. Stephens was suggested and the case was thereupon prosecuted and tried in the name of William Perry Stephens as surviving executor of the last will of the deceased, Nancy Stephens.

The declaration consisted of three counts, in the first two of which it was charged that the defendant, Illinois Central Railroad Company, had prior to July 6, 1927, by and with the consent of the City of Paxton, excavated a passage way for its tracks across a street known as Patton Street in said city, at a depth of 20 feet below the grade of Patton Street; that prior to said excavation the tracks of the railroad company had crossed said Patton Street at grade; that the defendant railroad company at the time of said excavation had constructed a bridge along the center of Patton Street over said excavation, but that the bridge was not as wide as the width of Patton Street. There was no evidence offered in the case to show that the railroad company constructed the bridge or to show by whom it was constructed. The declaration further charged that the railroad company in the City of Paxton carelessly and negligently left the said excavation across Patton Street on either side of said bridge exposed and unprotected; that on July 2, 1927, the deceased, Nancy Stephens, was riding in an automobile upon Patton Street and that the automobile ran into the excavation north of the bridge on Patton Street and as a result thereof she was injured and died, leaving her surviving her husband, Thomas Stephens, also known as Thomas Jefferson Stephens, and her sons, Charles H. Stephens and William Perry Stephens. The right of way of the railroad company and the excavation referred to ran north and south through the City of Paxton, while Patton Street and the bridge along the same over the excavation ran in an easterly and westerly direction. The sole negligence charged in the declaration against the defendant railroad company was the alleged failure to guard the excavation, north and south of the bridge, by fence or rails, etc.

The third count of the declaration recited the same alleged facts as in the first two counts and charged by reason of the same wilful and wanton conduct on

the part of the defendant. To each of the three counts of the declaration the defendant, Illinois Central Railroad Company, demurred generally and specially, and the demurrer was sustained as to the third count and overruled as to the first and second counts. The plaintiff did not amend the third count, the defendant railroad company pleaded the general issue to the first two counts and the case was tried upon the first and second counts.

In both the first and second counts it was merely alleged that the deceased Nancy Stephens was riding in an automobile upon Patton Street and was at the time in the exercise of due care for her own safety; it developed in the evidence that the automobile in which she was riding at the time of the accident was being driven by her husband, Thomas Jefferson Stephens, who was one of the next of kin for whose benefit the action was brought. There was no allegation in either of the counts as to who was driving the automobile at the time and there was no allegation, either direct or indirect, that the driver of the automobile, being the husband of the deceased, was in the exercise of due care at any time.

We have gone into brief detail as to the declaration for the reason that several questions arising from the same are important in the review of this case and will be discussed later.

The evidence shows that the railroad company's right of way, 200 feet wide, and its tracks had been laid out and established in the place in question prior to the time the City of Paxton, formerly known as Prospect City, was laid out and platted in the year 1857. The railroad company was the owner of the 200 foot right of way. No evidence was offered as to any dedication or platting of Patton Street across the railroad company's right of way in the City of Paxton, but the plaintiff called several witnesses who testified

that prior to the making of the excavation, which occurred several years before the date of the accident, July 6, 1927, vehicles and pedestrians had crossed the railroad right of way at this point and that there were planks laid between the rails to the width of from 32 to 36 feet; that there was a sidewalk about five feet north of the end of the planks, but no sidewalk on the south side of the planks. It was not solidly planked between the rails and there was nothing but the ground between the planks and the sidewalk referred to. There was no pavement on Patton Street prior to the time of the excavation of the railroad right of way. Any use of a passageway by vehicles or pedestrians over the railroad right of way began long after the railroad company acquired the ownership of the land occupied by its right of way.

The accident resulting in the death of Nancy Stephens happened on July 6, 1927. The deceased at the time was riding in an automobile driven by her husband, Thomas Jefferson Stephens. The automobile was being driven north on Railroad Avenue, a paved street running north and south in the City of Paxton, situated a short distance east of the railroad excavation and the Patton Street bridge. The automobile came up to the street intersection of Railroad Avenue and Patton Street and turned west on Patton Street and as it made the turn was driven off of the north side of Patton Street pavement across a concrete sidewalk and for a considerable distance over the earth surface within the railroad right of way and then into the railroad excavation north of the bridge in question. The automobile then overturned and the deceased received the injuries from which she died.

Several years prior to the date of the accident the railroad excavation was made and the Patton Street bridge constructed over the excavation. To the east of the Patton Street bridge there was a paved street

known as Railroad Avenue, running north and south through the City of Paxton, and over which State Highway No. 25 was routed. Patton Street at the time of this accident was a paved street running east and west and the intersection of Patton Street and Railroad Avenue was east of the Patton Street bridge. The defendant's witness Kromeenes had made accurate measurements with a Lufkin metallic tape of the conditions and objects there at the street intersection and at Patton Street bridge and had prepared a plat showing these measurements and the conditions there at the scene of the accident.

The width of the pavement on Railroad Avenue from face to face of curb just south of the street intersection with Patton Street is 25 feet. The pavement on Patton Street, going west after it leaves the street intersection, and as it crosses the Patton Street bridge, is 24 feet wide. On each of these two pavements there is a 6-inch concrete curb except for a short distance on the Patton Street pavement on the west side of the street intersection.

The Patton Street bridge was constructed of concrete and carried a pavement across it of the width of 24 feet from face to face of curb, then a 6-inch concrete curb on each side of the pavement and then on each side of the pavement and clear across the bridge a concrete sidewalk of the width of 5 feet. Along the bridge and on the outside of each sidewalk was a concrete railing extending the entire length of the bridge and east to a point 14½ feet east of the east abutment of the bridge and 7½ feet east of the east edge of the railway excavation. The Patton Street bridge was 34 feet wide between the concrete railings.

The distance from the center line of Railroad Avenue directly west to the east end of the bridge was 57 feet and 6 inches and the distance from the center line of Railroad Avenue to the east edge of the rail-

way excavation was 65 feet and 3 inches. The Patton Street pavement at the street intersection was brick pavement extending from the center line of Railroad Avenue west 19 feet and 8 inches. Continuing the brick pavement on Patton Street to the west, there was a strip of macadam pavement 11 feet 4 inches wide. Along the north side of that macadam strip in Patton Street there was no curb, being the point where an interurban railway track formerly crossed. From the west edge of that opening in the curb on Patton Street to the east end of the bridge was a distance of 26 feet and 4 inches. The four corners of the pavement at the street intersection of these two streets were rounded out as shown on the plat and the photographs, which have been certified to this court. In going from Patton Street at its intersection with Railroad Avenue toward the railroad excavation north of the Patton Street bridge the slope of the land and of the pavement was upward. The east line of the railroad right of way was 35 feet east of the east edge of the excavation.

There was a verdict and judgment in the sum of $4,036.12 and appellant has brought the record to this court for review.

Various assignments of error are made, but in the view of this court it will be necessary to consider only two. At the close of plaintiff's testimony and again at the close of all the testimony, the defendant, appellant, moved the court to instruct the jury to find a verdict for the defendant, which was denied. This motion was based upon the ground that appellee not only had not shown that the driver of the car, husband of deceased, exercised any care and caution in the management of the machine, but that the proofs showed that Thomas Jefferson Stephens, driver of the car and one of the beneficiaries, was absolutely negligent at the time and place in question, and that his negligence contributed to the injury.

As to the proofs: Just four eyewitnesses to this accident testified in this case. The driver of the automobile, Thomas Jefferson Stephens, who was also the husband of the deceased, and Raymond Stephens, a grandson of the deceased, were witnesses called by the plaintiff. The other two eyewitnesses were Leonard Carroll and Walter Darnell, who were called by the defendant.

The husband, Thomas Jefferson Stephens, did not testify before the jury but his deposition was taken at the instance of the plaintiff and read to the jury. He testified that he was 79 years of age at the time of the accident and that his wife was 72 years old; that on the day of the accident and shortly prior to the same he had been in Champaign, Illinois, where he purchased a second-hand Packard automobile and that he was driving the same from Champaign to his home in Paxton, his wife riding on the rear seat when the accident occurred, and that this was the first time he had ever driven this Packard car; that he and his wife had lived in Paxton for 14 years prior to the time of the accident and were living there when the railroad company excavation was made and the Patton Street bridge constructed, his home being within a few blocks of the bridge in question; that he knew before the time of the accident that the excavation was there and had driven over the Patton Street bridge several times.

The driver further testified that the accident happened about noon. It was a bright, clear, sunny day, the pavement was dry and his brakes worked alright. The pavement was clear of traffic. Mr. Stephens said that he was driving north on Railroad Avenue, or route 25, at the rate of about 25 or 30 miles an hour until he got close to the Patton Street intersection, when he slowed down to 8 to 10 miles an hour, and that Mr. Clucas was riding on the front seat with him,

the deceased and her grandson, Raymond Stephens, being on the rear seat; that as he started to turn west onto Patton Street the left front wheels of his car were a foot east of the center line of Railroad Avenue, and the automobile was 15 or 20 feet south of the south line of Patton Street; that as he made the turn he saw he might miss his aim getting on the bridge and put his foot on the brake and the other on the clutch and turned the wheel as far around as it would go ''and it would not go any further—seeming to lock or something''; that the steering wheel seemed to lock just before he hit the curb and he couldn't get the car turned far enough to get on the bridge and that he put his foot on the brake as soon as he saw he might miss getting on the bridge.

Mr. Stephens further testified that the automobile struck the concrete curb on the north side of Patton Street and left the pavement just as it got across where the interurban used to be, the former interurban having crossed where the macadam strip of pavement on Patton Street above referred to, was laid. According to Mr. Stephens, his automobile went over the north curb of the Patton Street pavement at this point. His automobile then crossed the concrete sidewalk on the north side of Patton Street, then toward the west over the earth surface, between the sidewalk and the east edge of the railroad excavation and then into the excavation itself. In Mr. Stephens' opinion it might have been 20 or 30 or 40 feet from the place where he started to make the turn to the place where his automobile struck the north curb on Patton Street, then his car crossed over the sidewalk and, in his opinion, traveled a distance of about 10 feet or less than two car lengths from the sidewalk until it struck the east edge of the cut.

Shortly after the accident and on the same day Mr. Stephens stated to Emil Thompson, a witness in

the case, who is a State highway traffic officer, in explanation of the accident, that "I must have gotten my foot on the gas feed instead of on the brake." On December 24, 1927, a few months after the accident, Mr. Stephens stated to Mr. Sawin, a witness called by the defendant, that as he went to make the turn he probably did not make the turn quite fast enough and struck the end of the curb and that threw him out of gear. He further stated to Mr. Sawin:

"I think I did not take it (the turn) fast enough, it was a new car, the other I could have turned shorter with it, this one was the first I made the turn with." Mr. Stephens did not deny making these statements to Mr. Sawin.

Raymond Stephens, a grandson of the deceased, and the other eyewitness called by the plaintiff, testified that he was sitting in the back seat of the automobile; that when his grandfather got to the place where the interurban tracks used to be, he slowed down to 8 to 10 miles an hour and that when he got to the curb on Patton Street he was going about 5 miles an hour. On cross examination this witness first testified that he, the witness, did not observe anything about the way the car was driven as he came up to Patton Street; that the witness was looking out of the window and watching some boys roller skating. Then this witness changed his testimony and denied that he was looking out of the window or that he was watching boys roller skating. This witness further testified that he attended the subnormal room at the Yale School in Chicago. Prior to his testifying in this law suit the boy Raymond, who was 13 years of age at the time of the accident, stated to the witness Sawin that at the time of the accident "I was looking out of the window and I saw some kids roller skating and I was watching them. I didn't know anything, the car just went down, that is all I know."

Raymond Stephens did not deny making this statement.

Leonard Carroll, a witness called by the defendant, testified that just prior to the accident he was driving an automobile north on Railroad Avenue up toward the Patton Street intersection; that about a block south of Patton Street the Stephens car passed the witness traveling at a rate of 35 miles an hour, and that the Stephens car was going around 20 or 25 miles an hour when Mr. Stephens started to turn onto Patton Street, and that it was traveling at the same rate of speed when it hit the curb on the north side of Patton Street and after it hit the curb the Stephens automobile picked up more speed.

Defendant's witness Walter Darnell testified that at the time of the accident he was on the Patton Street bridge walking east within 20 feet of the east end of the bridge, and that he saw the Stephens automobile when it was about 50 feet south of the Patton Street intersection with Railroad Avenue and at that time the Stephens car was running at about the rate of 20 miles an hour; that as the Stephens car started to make the turn onto Patton Street and as it was making the turn it was traveling at the rate of about 20 miles an hour and the wheels began to shimmy. This witness testified that the car was going about 20 miles an hour when it struck the curb and when it struck the curb the witness was right at the east end of the bridge and about 25 feet from the Stephens car. As the car struck the curb it bounced up off the ground, made a lunge forward, picked up speed and turned directly north for a distance and then turned in a northwesterly direction over toward the railway cut, traveling at that time at about 22 miles an hour. Mr. Darnell said that the left wheel of the Stephens car struck the curb just a few inches west of the opening in the curb on Patton Street and that the right

wheel went through the opening; that following the course of the automobile from the point where the left wheel struck the curb to the point where the automobile reached the east edge of the railway cut was a distance of about 60 feet.

This witness was within a few feet of the Stephens car during all the time from when it started to make the turn onto Patton Street down to the time it plunged into the railway cut. Immediately after the car ran into the cut the witness went down the embankment to the automobile. He testified that the point where the Stephens automobile went down the embankment was a distance of about 45 feet north of the north side of the Patton Street bridge.

Both of the witnesses Carroll and Darnell were residents of Paxton at the time and were entirely disinterested witnesses, being neither related nor connected in any way with either of the parties to this lawsuit.

There is some conflict in the testimony as to how far north of the Patton Street bridge the automobile plunged into the cut. Mr. Stephens, the driver, claimed that the left side of his car was about a couple of feet from the east end of the bridge.

The plaintiff, William Perry Stephens, testified that he examined the scene of the accident about six hours after it happened and after the automobile had been removed from the excavation, and that he saw some tracks on the east edge of the railway cut a foot and a half north of the bridge.

The eyewitness Darnell, who observed the automobile during the whole course from the time it turned west onto Patton Street to the time it plunged down into the cut, testified that the automobile went down the cut about 45 feet north of the Patton Street bridge.

From all of this testimony all reasonable minds would agree that the driver of the automobile was negligent in driving at so great a rate of speed at and

just before he was about to make a left-hand turn across a State highway, and in driving too far into Patton Street before he commenced to make a right angle turn upon a pavement 24 feet in width. And the driver was especially negligent in driving a Packard car, one which he had not driven before and of a kind which he had not driven, at the rate of speed as stated. If the driver stepped upon the gas instead of the brake, as he must have done, he was negligent. No explanation is made as to the condition of the car, the steering wheel or the brake or as to what caused the wheel to become locked when turned part way around. This could not have been caused by defendant's embankment or the failure to fence the same. If the driver put one foot on the brake and the other on the clutch, as he states he did, the car would have stopped if the car had brakes, and the driver was bound to know whether the car was equipped with brakes, a proper clutch and a steering wheel that would turn a car around a circle and would not "lock." No testimony was offered by plaintiff or otherwise as to the former use or operation of the car in question, or what care had been given to its mechanical parts. All that Stephens knew about the car he was driving was that he had traded a Velie for it that morning and that it was a secondhand car; he did not know how old it was.

Stephens, the driver, was negligent in driving the car at all under the circumstances. He was 79 years of age and whether or not the defendant was negligent as charged in the declaration Stephens, the driver, a beneficiary of the deceased, was guilty of negligence in the operation of the automobile which contributed to, at least, if it did not in fact cause the injury.

Appellant moved after verdict in arrest of judgment on the ground that no count in the declaration stated a cause of action, inasmuch as the declaration did not allege the due care and caution of the driver,

Thomas Jefferson Stephens, a beneficiary of deceased. It has been held that it was a material part of the plaintiff's case that the driver of the automobile, being a beneficiary, was in the exercise of due care and caution and the burden of proof to show due care and caution on the part of the driver was on the plaintiff and without that showing there could be no right of action. (*Hazel v. Hoopeston-Danville Motor Bus Co.,* 310 Ill. 38; *Follett v. Illinois Cent. R. Co.,* 288 Ill. 506, 513; *Ohnesorge v. Chicago City R. Co.,* 259 Ill. 424; *Chicago City Railway Co. v. Wilcox,* 138 Ill. 370.)

In *Follett v. Illinois Cent. R. Co., supra,* the court instructed the jury that the burden of proof to show such want of care was on the defendant. This the court held was error and held:

"The defendant had a right to have the law given to the jury that the burden was on the plaintiff to prove the exercise of ordinary care on the part of the parents, who were to participate in any recovery, and the instruction was changed by the court so as to place that burden upon the defendant, and require it to prove, by a preponderance of the evidence, that the parents did not exercise the required degree of care."

A declaration must allege all the circumstances necessary for the support of the action. A declaration which fails to allege a fact without the existence of which the plaintiff is not entitled to recover, does not state a cause of action and the defect in such declaration is not cured by verdict. (*Walters v. City of Ottawa,* 240 Ill. 259; *McAndrews v. Chicago, L. S. & E. R. Co.,* 222 Ill. 232; *Volluz v. East St. L. Light & Power Co.,* 210 Ill. App. 565; *Means v. Terminal R. Ass'n,* 202 Ill. App. 591.)

A declaration in an action to recover for injury received through negligence, which does not aver due care on the part of the plaintiff when he was injured and does not contain any averment in regard to his

conduct or the circumstances surrounding him from which due care on his part may be reasonably inferred, does not state a cause of action. *Walters v. City of Ottawa,* 240 Ill. 259.

If the declaration omits to allege any substantial fact which is essential to a right of action and which is not implied in or inferable from the facts which are alleged, a verdict for the plaintiff does not cure the omission. (*Hartray v. Chicago Rys. Co.,* 290 Ill. 85; *Foster v. St. Luke's Hospital,* 191 Ill. 94.)

In *Bowman v. People,* 114 Ill. 474, the court held: "The rule is, if the declaration omits to allege any substantial fact which is essential to a right of action, and which is not implied in or inferable from the finding of those which are alleged, a verdict for the plaintiff does not cure the defect. Chitty, in his work on Pleadings, says: 'The expression, cured by verdict, signifies that the court will, after a verdict, presume or intend that the particular thing which appears to be defectively or imperfectly stated or omitted in the pleadings, was duly proved at the trial. And such intendment must arise, not merely from the verdict, but from the united effect of the verdict, and the issue upon which such verdict was given. On the one hand, the particular thing which is presumed to have been proved must always be such as can be implied from the allegations in the record, by fair and reasonable intendment; and on the other hand, a verdict for the party in whose favor such intendment is made is indispensably necessary.' "

To meet this conclusion, appellee contends that the averment that the deceased was in the exercise of due care is broad enough to include due care on the part of the next of kin, who was driving the car, but no cases are cited to support this view. Appellee argues that want of care on the part of the next of kin will be attributed or imputed to the deceased and that, there-

fore, the averment as to due care on the part of the deceased is sufficient. But in *Hazel v. Hoopeston- Danville Bus. Co., supra,* it is expressly held that want of due care on the part of the next of kin in cases of this character will not be imputed or attributed to the deceased but that such want of care on the part of the next of kin is in and of itself a complete defense to the action. In that case the Supreme Court said, on page 42:

"If the deceased was guilty of no personal negligence which would have barred her from maintaining the action, the negligence of her husband could not have been imputed to her for that purpose, and the question presented is whether the right of action created by the statute in favor of her personal representatives is barred by the contributory negligence of her surviving husband."

Again in the same case the Supreme Court, after stating that in cases of this·character negligence on the part of the next of kin will not be imputed to the deceased, said, on page 45:

"The reason that the negligence of the parent of an infant decedent, or of any beneficiary, is a bar to the action of the administrator is, that, the action being for damages caused to the beneficiary by the negligence of the defendant, it has been the theory of the common law in every such case that the contributory negligence of the person suffering the damages is a complete defense to the person negligently causing the injury. In every such case the party who by his own negligence has contributed materially to his injury is left remediless by the common law, for the reason, universally recognized where that system of law prevails, that no man may recover damages for an injury to himself or his property which he himself was a material instrument in causing. The principle applies not only to suits for damages for the

death of minor children caused by negligence where the parent has himself been negligent, but to every case under the act authorizing the recovery of damages for death caused by a wrongful act, whether the relation of the deceased and the next of kin was that of parent and child, husband and wife, brother and sister or other relation, whether the deceased was in the care of the next of kin or not, and whether the deceased was an adult or minor.''

It follows that in this cause the allegation that the deceased was in the exercise of due care and caution did not supply the defect in the declaration in failing to allege that the driver, a beneficiary, was also at the time and place in question, in the exercise of due care and caution for the safety of the deceased, and no other fact proven, as alleged, warrants any such inference or conclusion or cures the defect by verdict.

It is the conclusion of this court on both questions that the verdict and judgment should be reversed, with a finding of fact and that the motion in arrest of judgment should have been granted. Accordingly, it is ordered that said judgment be arrested for want of a sufficient narr, and that the verdict and judgment of the circuit court of Champaign county be and it is reversed.

*Reversed with a finding of fact.*

The clerk will enter the finding as a part of the judgment:

We find as a fact that Thomas Jefferson Stephens, driver of the car and a beneficiary, was guilty of negligence that contributed to the injury and death of the deceased.